IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SIGNAL FINANCIAL HOLDINGS LLC and <br> SIGNAL FUNDING LLC, both Delaware <br> limited liability companies, | ) <br> ) <br> ) <br> ) | |
| Plaintiffs/Counter-Defendants, | ) | No. 17 C 8816 |
| | ) | |
| v, | ) | |
| | ) | |
| LOOKING GLASS FINANCIAL LLC, <br> a Delaware limited liability company, and <br> FARVA JAFRI, an individual, | ) <br> ) <br> ) <br> ) | Hon. Joan Humphrey Lefkow |
| Defendants/Counter-Plaintiffs | ) | |

DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' (i) MOTION TO PLACE UNDER SEAL DEFENDANT'S THIRD
AFFIRMATIVE DEFENSE (UNCLEAN HANDS – EMPLOYEE HANDBOOK)
AND (ii) MOTION TO STRIKE THIRD AFFIRMATIVE DEFENSE

I.     Introduction  -- Meet *John Doe*

For the first time in this action, Plaintiffs are asking the Court not only to seal a court document (in this case an affirmative defense rather than entire memoranda) but to handcuff and gag Farva Jafri and her attorney from communicating with anyone in the world other than each other about the "substance" (Motion, p. 4) or "contents" (Plaintiffs' Proposed Order) of the third affirmative defense.  Plaintiffs are mounting their relentless effort to reach this remarkably oppressive and blatantly unconstitutional goal not to protect a trade secret, national security, the identity of a minor, the privacy of a *victim*, or any other cognizable privacy interest. Instead they seek to assure that their efforts to burnish the long-tarnished reputation of a *victimizer*, *John Doe* of *XXX Partners*[1]*,* are not impeded just because *Doe* is an unrepentant vulgarian around his

---

[1] *John Doe* and *XXX Partners* are pseudonyms, respectively, for the individual and business entity whose true legal names appear in the first sentence of the first paragraph on page 24 of Defendants' third affirmative defense. (Dkt. #82). Defendants are using the pseudonyms in this response solely to avoid further proliferation of Plaintiffs' motions for seal and gag orders, and rules to show cause and testimonial criminal contempt hearings against Jafri and her counsel, and also to obviate any need to further

female employees and has a penchant for handing out his Ritalin to other executives. In their effort to suppress truthful information about *Doe*, driven by the soaring ego of this powerful corporate chieftan, Plaintiffs have not cited a single case for the proposition that the Court may properly exercise its authority to even *seal* such facts on behalf of an alleged wrongdoer, let alone impose a *gag order* against the victim of the wrongdoer and her attorney.

Plaintiffs' motion trumpets their 'success' in obtaining three prior seal orders. What Plaintiffs choose to overlook is that those seal orders were entered by the Court as "temporary" orders, without any hearing or opportunity for submission of a written response, until this latest motion. Those "temporary" orders were intended by the Court to be followed in close order by hearings on the motions to seal, the first scheduled for January 18, 2018, but not held. (That is no fault of the Court; Defendants/Counter-Plaintiffs recognize that the Court has already devoted an inordinate amount of time to this case, a case that Defendants have diligently and in good faith tried to bring to closure, as more particularly alleged in the six affirmative defense (mootness) and seventh affirmative defense (failure to mitigate damages) (Dkt. #82, pp. 24-25).

Plaintiffs have egregiously misrepresented the record in stating that "this Court has already explicitly ruled that these scurrilous grounds are not relevant to this trade secrets case." (Motion, p. 3) (Emphasis supplied). It is true that in its Order setting the preliminary injunction evidentiary hearing, the Court expressly declined to permit Jafri to offer evidence concerning the unclean hands of *John Doe* and Plaintiffs (Dkt.# 60, p.2), but the Court did not characterize anything that Defendants said or wrote as "scurrilous." Furthermore, the Court's ruling was based upon Jafri's assertions in her memorandum for an evidentiary hearing. (Dkt. #51, pp. 2-5) As discussed in Section II-B (p. 7) below, the allegations of the third affirmative defense

---

bowdlerize their necessary references to *John Doe's* misconduct to the point where a reader of this response would have difficulty apprehending the nature of the controversy and be left to speculation..

introduce a new and material factor into the unclean hands equation, the Employee Handbook itself. The Court's Order confirming the evidentiary hearing, like its recent Modified Preliminary Injunction Order (Dkt.# 79), was interlocutory. Nothing in the Order purported to preclude Jafri from pleading for the first time in her original answer an unclean hands defense to be considered on its own merits as pleaded, just as an amended affirmative defense would be considered on its own merits even if the first iteration of the defense were ruled insufficient by the Court.

In all of their motions to seal, and their current motion to seal and gag, Plaintiffs accuse Jafri and her counsel of being "scurrilous," or offering "scurrilous grounds." In falsely stating in their motion that the Court itself found that Defendants offered "scurrilous grounds" found irrelevant by the Court, the Plaintiffs are attempting to project their ill-tempered disdain for Jafri and her counsel onto the Court. Moreover, this adjective, "scurrilous," would appear to apply more to the language that was actually used by *John Doe*[2] than to Defendants' legal arguments:

> **SCURRILOUS**. The low and indecent language of the meaner sort of people, low indecency or abuse; mean; foul, vile, synonymous with vulgar; foul or foul-mouth. (citations omitted).

*Black's Law Dictionary* (4th ed. 1968). *Doe* is the one who joked with his male colleague about "Big [Breasts]" in *XXX Partners'* offices in Jafri's presence and loudly inquired of a male associate, again in Jafri's presence, whether he was "still [penetrating] that girl in HR."[3] Clearly, Plaintiffs have attacked Jafri and her counsel not because *they* have been scurrilous, but because *John Doe* has been revealed as a person who uses scurrilous language himself in a business

---

[2] *John Doe's* scatological comments concerning "big [breasts" and "[penetrating] that girl in HR were unexpurgated in the fact-specific recounting of *Doe's* misconduct set forth in Jafri's memorandum for an evidentiary hearing, and bowdlerized later and in the third affirmative defense with the foregoing bracketed euphemisms.

[3] *Doe* actually called out the young male associate's name. In her first averment about this incident, in her memorandum for an evidentiary hearing, Jafri omitted the name of the male associate (leaving a blank in the text) respecting his privacy as one of *Doe's* bullying victims. (Dkt.#51, p. 4).

3

office setting. It is a sad commentary on Plaintiffs' skewed moral perspective that Plaintiffs find *Doe*'s foul-mouthed exclamations objectionable when recounted in a court paper, but tolerate them when repeatedly uttered by *Doe* to his employees in the workplace.

While throwing the mud of the "scurrilous" adjective repeatedly at Jafri and her counsel, there are certain words from which even Plaintiffs refrain, knowing that they cannot truthfully use them to describe Jafri's allegations about *John Doe* – adjectives such as "false" and "untrue."

> II. Plaintiffs Have Not Made the Requisite Showing that
> the Third Affirmative Defense Should Be Placed under Seal,
> <u>and Jafri and her Counsel Gagged</u>.
>
>> A. Plaintiffs Have Failed to Meet the Seventh Circuit's
>> <u>Requirements for a Seal Order</u>.

Plaintiffs' current motion for a seal and gag order, like their earlier motions to seal, does not even attempt to meet the Seventh Circuit's mandate to "analyze in detail the propriety of secrecy, providing reasons and legal citations," and provide support for any statement claiming that "injury will result from public disclosure of certain information . . . ." *Baxter Int'l v. Abbott Labs*, 297 F.3d 544, 548 (7th Cir. 2002). Plaintiffs quote this same passage from *Baxter Int'l* (Motion, p. 3), but have made no effort to meet its requirements. They provide no analysis, let alone the required detailed analysis, of the propriety of secrecy, and provide no reasons and legal citations to support their invocation of the Court's authority to seal and gag undisputed, truthful statements about the misconduct of a senior corporate officer. They offer no reasons and no legal citations to support their blatantly unconstitutional request, just conclusions parroting the legal terminology of Fed. Rule 12(f).

Although the burden on this motion to seal and gag is on the Plaintiffs, and it is incumbent upon them to cite controlling, relevant authority showing that the Court has authority to suppress truthful statements about the misconduct of a person in *John Doe's* position, Defendants will, set forth the Seven Circuit's guidance on the subject of sealing orders. In an

opinion that dealt solely with the issue of placing court records under seal in a trade secrets case, the Seventh Circuit wrote at length (through Judge Easterbrook) about the limits on a district court's power to place court documents under seal and the important public policies that warrant such limits. In *Union Oil Company of California v. Leavell*, 220 F.3d 562 (7th Cir. 2000), the Court held:

> The district judge did not explain his sealing order.
>
> * * *
>
> Litigation about trade secrets regularly is conducted in public; the district court seals only the secrets (and writes an opinion omitting secret details); no one would dream of saying that every dispute about trade secrets must be litigated in private. Even disputes about claims of national security are litigated in the open.
>
> * * *
>
> [T]he tradition that litigation is open to the public is of very long standing. People who want secrecy should opt for arbitration. When they call on the courts, they must accept the openness that goes with subsidized dispute resolution by public (and publicly accountable) officials. Judicial proceedings are public rather than private property, and the third-party effects that justify the subsidy of the judicial system also justify making records and decisions as open as possible. What happens in the halls of government is presumptively public business. Judges deliberate in private but issue public decisions after public arguments based on public records. The political branches of government claim legitimacy by election, judges by reason. Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat, which requires compelling justification.
>
> * * *
>
> This is not the first time we have encountered requests to seal proceedings in order to implement the parties' preference for seclusion. The requests have been uniformly rejected. See, e.g., <u>In re Continental Illinois Securities Litigation, 732 F.2d 1302 (7th Cir.1984)</u>. Ever since *Continental Illinois,* we have insisted that only genuine trade secrets, or information within the scope of a requirement such as Fed.R.Crim.P. 6(e)(2) ("matters occurring before the grand jury"), may be held in long-term confidence.

5

*Union Oil Company of California v. Leavell*, 220 F.3d at 567-568 (internal citations and quotation marks omitted). There is no time limit specified in Plaintiffs' motion to seal Defendants' third affirmative defense and gag Jafri and her counsel. Thus, Plaintiffs seek a perpetual seal and gag order. Such a seal is proscribed by *Union Will Company of California v. Leavell*, as the material that Signal seeks to place under seal does not contain any trade secrets nor matters occurring before the grand jury (or any other legally cognizable privacy interest). Furthermore, Plaintiffs have never availed themselves of a confidentiality designation under the 15-page Confidentiality Order (Dkt #18), that the Court entered at Plaintiffs' request on December 13, 2017, six days after the commencement of this action.

        B.      The Allegations about *John Doe* Are Not Unrelated
                <u>But Are Integral to the Third Affirmative Defense</u>.

There are no trade secrets mentioned in the third affirmative defense of Defendants' Answer. There are also no names of adolescent sex abuse victims, and no top-secret plans concerning the deployment of North American Air Defense Command ABM's against North Korea. Rather, the Third Affirmative Defense truthfully alleges harassment, including sexual harassment, and criminal distribution of prescribed drugs in the workplace by *John Doe*, Plaintiffs' ultimate leader through his supreme position at *XXX Partners*, conduct that not only violates the law but several provisions of the Employee Handbook as well.

The Court previously held that averments of *John Doe's* wrongdoing in Defendants' memorandum for an evidentiary preliminary injunction hearing were, in the specifically stated context of Jafri's "motivation," "irrelevant" to the trade secrets claims.[4] (Dkt.# 60, p. 2).

---

[4] Jafri's memorandum requesting an evidentiary hearing did not assert that she was motivated by *Doe's* wrongdoing to transfer the Signal slide deck or any other documents from her authorized corporate email account to her personal email account. Jafri testified at the preliminary injunction hearing that she did not take these documents as revenge against *John Doe*. (Tr. 1/19/18, 130:13)

The third affirmative defense of unclean hands is not based upon Jafri's motivation but upon *John Doe's* and Plaintiffs' unclean hands. The Court is correct that is not a sexual harassment or hostile work environment case; there no counterclaims premised on such theories. The Court is correct that this is a trade secrets case. However, this case is also an Employee Handbook case, due to the allegations of the complaint regarding the Employee Handbook (Complaint, Dkt.# 1, ¶¶ 18, 19, 33 ("Defendant Jafri committed those improper acts . . . in violation of Signal policies, as detailed in the operative August 2016 employee handbook"), and 36), which are realleged and incorporated into every count of the complaint, as well as Plaintiffs' submitted evidence of Plaintiffs (Hough Declaration, ¶ 5, and Exhibit A).

In its January 31, 2018 Order and Opinion, the Court characterized of the Employee Handbook issue as a "somewhat of a red herring." (Dkt. #79, p. 4). However, Plaintiffs obviously do not share the Court's assessment. They have not withdrawn any of their allegations concerning the Employee Handbook from their pleadings, nor the document itself from evidence. Given Plaintiffs' persistence, Defendants must take Plaintiffs' complaint and exhibits as they find them. Thus, Defendants must treat this case, at least in substantial part, as an Employee Handbook case, and must plead their defenses accordingly. (Defendants note, however, that if Plaintiffs were to withdraw their above-referenced allegations and the Employee Handbook, such withdrawal would moot the third affirmative defense as well as Plaintiffs' motion to strike that defense and for a seal and gag order).

Based upon Defendants' memorandum for an evidentiary hearing on the preliminary injunction motion, the Court juxtaposed *John Doe's* alleged misconduct against Plaintiffs' trade secret claims without the just-pleaded context of the Employee Handbook. The new and unprecedented issue before the Court is whether Plaintiffs may enforce the Employee Handbook against Jafri when Plaintiffs themselves have unclean hands with regard to their own violations

7

of that exact same Employee Handbook. The third affirmative defense succinctly pleads in less than one full page of text (Dkt.# 82, pp. 23-24) how *John Doe* engaged in illegal activity on his business premises, consisting of the distribution of prescription drugs, specifically Ritalin, to persons for whom the drugs had not been prescribed and also created a sexually-harassing, hostile work environment for Jafri in meetings she attended with *Doe* and other male employees, in which *Doe* reveled in using sexually-charged language unacceptable from the leader of any respectable workplace. All of these acts of misconduct, wrongful in and of themselves and violative of several laws, fall within the ambit of "unclean hands" because they also constitute violations of several identified provisions of the Employee Handbook that Plaintiffs are attempting to enforce.

Because the Employee Handbook is, by Plaintiffs' own lights and pleadings, an integral part of the liability foundation for their trade secret claims against Jafri, Jafri's affirmative defense that Plaintiffs' claims are barred by the unclean hands of their own violations of that self-same Employee Handbook establish a sufficient defense. It does not matter that *John Doe* and Plaintiffs violated different provisions of the Employee Handbook from the Confidentiality provision they accuse Jafri of having violated. Analogous to the defense in a simple breach of contract action that a seller's of performance (such as delivery of goods) is excused by a material breach of the buyer (such as failure to pay an initial installment) it does not matter that the duties purportedly breached on each side pertain to different obligations contained in the controlling document.

In summary, Plaintiffs should not be permitted to "throw the book" (i.e., the Employee Handbook) at Jafri when the book has already been soiled by their unclean hands. Plaintiffs' unclean hands give the Court legal authority to swat the dirtied book away before it hits Jafri in the head.

III. Plaintiffs' Proposed Gag Order Would Deny Jafri and Her Counsel
<u>Fundamental Constitutional and Due Process Rights</u>.

Plaintiffs have provided no valid reasons, and offered no legal citations establishing that Plaintiffs have a right to place under seal an entire legally sufficient defense because of true facts that Plaintiffs' top boss finds disagreeable. Plaintiffs, not Jafri or Looking Glass, elected to file this lawsuit (without a cease and desist letter or any other private warning) knowing it would be carried out in a public forum. As Judge Easterbrook pointed out in *Union Oil Company v. Leavell*, *supra*, Plaintiffs could have opted for arbitration provisions (not unusual in executive employment agreements) if they wished to keep themselves out of the public eye.

Plaintiffs, no strangers to hypocrisy, have gratuitously sought to embarrass Jafri in this lawsuit with <u>false</u> and irrelevant allegations accusing Jafri of misrepresenting that she is a licensed attorney (Complaint,¶¶ 12, 13), and that "her behavior became erratic and bizarre" (Complaint, ¶ 21), echoing atavistic sexist rationales that women are too emotional to assume leadership roles in the American corporate world. Jafri has not asked the Court to put the complaint or any part of it under seal because she knows that law does not support such an action by the Court. Besides, unlike *John Doe*, hiding out in his *XXX Partners* executive suite overlooking a flotilla of cruise ships in Miami and tasking his minions to appear before the Court and suppress the truth about his abuses with seal and gag orders, Jafri has the courage to face her accusers and deal with their attacks without trying to put the case under wraps and hide it from the public (or government agencies), even though Plaintiffs, not Jafri, chose this public forum.

Jafri and her counsel presently have a First Amendment a right to discuss any aspect of this case with anyone they wish, subject of course to preservation of attorney-client privilege and any other of limitations provided by law or warranted by prudence. This constitutional right is not one that Jafri and her counsel take lightly, and they will not surrender it willingly. This is not

9

just a matter of abstract ideals of citizenship or education, but heritage as well -- Jafri's grandparents emigrated from Iran, while her counsel's father fled Nazi Germany in 1938. The Court should reject Plaintiffs' demand that Jafri and her counsel be handcuffed (against typing emails) and gagged (against speaking to anyone other than each other) in brutal suppression of their constitutional rights. The First Amendment, a <u>genuine</u> right, should not be subordinated and sacrificed to the <u>pretended</u> "right" of a high-ranking executive, *John Doe*, to suppress truthful information about his misconduct on the job, in violation of his own company's Employee Handbook.

Plaintiffs' proposed order, if entered, will also wreak havoc with Jafri's preparation of her defense of the merits of this this case. She would be permitted to communicate only with her attorney. She and hear attorney would not permitted to communicate with experts or any other professionals whose assistance might be needed relative to the third affirmative defense. (It is no palliative to suggest that Jafri could periodically a present motions for specific relief from the gag order; that would affect require her to disclose her litigation strategy to Plaintiffs on an ongoing basis.) She and her attorney would also be forbidden from communicating with Looking Glass' other employees about even the Employee Handbook, let alone their experiences with *John Doe*. Jafri and her attorney would have not one hand, but both hands, handcuffed behind their backs in trying to defend this case.

The proposed gag order would also effectively prohibit Jafri, should she choose to do so, from pursuing Title VII charges or other causes of action against Plaintiffs or *John Doe*. There is no exception in the proposed gag order permitting Jafri or her attorney to communicate with government agencies, including law enforcement agencies about the "substance" or "content" of the third affirmative defense.

There is a separate procedural due process complication for undersigned counsel. Despite the Court having advised the parties in open court that her law clerk's diligent hours of research revealed that a contempt finding can be predicated only upon a willful violation of a specific and unequivocal decree from the Court (1/18/18 Tr., 9:24, 10:1, 10:18), and that the Court viewed the proliferating motion and briefing practice over *John Doe* as a "sideshow" (*Id.* 9:23). Rather than express candid disagreement with the Court's carefully researched legal guidance (if they actually disagree) and dispense with the sideshow, Plaintiffs are trying to move the sideshow to center ring in the big tent. On February 5, 2018, more than five hours <u>before</u> Defendants filed their answer with its third affirmative defense (Dkt.# 82), Plaintiffs filed an amended motion for rule to show cause (Dkt. #80), seeking for the first time to have undersigned counsel held in criminal contempt of court for alleged actions that all <u>antedate</u> the Court's January 18, 2018 guidance in open court about the legal standards for contempt and its view of the sideshow nature of these motions and briefs.

As a result of Plaintiffs' new effort to hold undersigned counsel in criminal contempt f court, he must now interview counsel and potentially engage counsel to defend him against the contempt proceedings sought by Plaintiffs, if the Court orders such proceedings. Undersigned counsel must also seek advice concerning potential insurance issues and possibly have to contact non-lawyers about those issues. Plaintiffs' proposed gag order, forbidding undersigned counsel to discuss the *John Doe* issue with anyone but his client, would completely block undersigned counsel's ability to protect his own legal interests (unless counsel files a series of motions seeking leave of court to communicate with identified third parties, thereby involuntarily waiving undersigned counsel's privilege with his own counsel.) Plaintiffs surely knew the problems that would be triggered by their amended motion for rule to show cause, combined

11

with their motion for a draconian and unconstitutional gag order close on its heels.  Plaintiffs are, after all, represented by one of the most shrewd and cunning trial lawyers in Chicago.

IV.     Conclusion

Plaintiffs' motion to seal and gag fails to meet the minimal pleading and evidentiary standards set down by the Seventh Circuit Court of Appeals. Plaintiffs have elevated the purely personal selfish interest of *John Doe* in protecting his reputation against the truth of his misconduct in his own business place, including his free use of scurrilous, sexist language with his employees, and criminally supplying his own prescription medication to other executives, in violation of the Employee Handbook, over the important public policy considerations identified by the Seventh Circuit and the constitutional rights of Farva Jafri and her attorney.  The Court should deny Plaintiffs' motion in its entirety.

                                   LOOKING GLASS FINANCIAL LLC
                                   and FARVA JAFRI


                                   By      *Mark A. Stang*
                                         Mark A. Stang

Mark A. Stang
Stang-Law Firm
584 Hyacinth Place
Highland Park, Illinois 60035-1265
(847) 432-2073

CERTIFICATE OF SERVICE

I, Mark A. Stang, an attorney, hereby certify that I caused a copy of the foregoing memorandum to be served on all counsel of record on February 7, 2018 by the Court's CM/ECF Transmission.

<u>*/s/ Mark A. Stang*</u>