**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
Eastern Division**

| | |
|---|---|
| **SIGNAL FINANCIAL HOLDINGS LLC,** *et al.*, | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) **Case No. 17-cv-8816** |
| | ) |
| **LOOKING GLASS FINANCIAL LLC,** *et al.*, | ) **Hon. Joan Humphrey Lefkow** |
| | ) |
| **Defendants.** | ) |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO BAR OR
LIMIT THE TESTIMONY OF THE SUGAR FELSENTHAL DEFENDANTS'
MALPRACTICE EXPERT ADRIAN VUCKOVICH PURSUANT TO FEDERAL RULES
OF CIVIL PROCEDURE 37(c)(1) AND 37(d)(1(A)(ii), FEDERAL RULE OF
EVIDENCE 702, AND *DAUBERT*, AND FOR AN AWARD OF ATTORNEY'S FEES**

Respectfully submitted,

 /s/ Constantine John Gekas
Constantine John Gekas
 CJG@gekaslaw.com
GEKAS LAW LTD.
33 North LaSalle Street STE 2220
Chicago, Illinois 60602
Tel: (312) 726-4501
Fax: (312) 726-4505

*Attorney for Plaintiffs*

## Table of Contents

FACTUAL AND PROCEDURAL HISTORY ............................................................... 1

APPLICABLE STANDARDS ................................................................................... 2

ARGUMENT ........................................................................................................ 4

1.    Vuckovich's opinions are irrelevant because they do not account for the fact that Signal is to be treated as a current client even after the SFGH Defendants dropped it as a client like a "hot potato" on October 27, 2017. ................................................................. 4

2.    Mr. Vuckovich and SFGH failed to comply with the mandatory disclosure requirements of Rule 26(a)(2)(B)(ii) & (vi), requiring exclusion of Mr. Vuckovich's testimony. .......... 9

      a.    The Reports do not adequately describe the facts or data Mr. Vuckovich considered in forming his opinions as required by Rule 26(a)(2)(B)(ii)...................................9

      b.    The Vuckovich Reports do not contain a "statement of the compensation to be paid for the study and testimony in the case," as required by Rule 26(a)(2)(B)(vi)......12

      c.    Under Rule 37(c)(1), the exclusion of Mr. Vuckovich's testimony is automatic..13

3.    Rule 37(d)(1)(A)(ii) requires the exclusion of Mr. Vuckovich's testimony because the SFGH Defendants failed to serve a written response to Plaintiffs' Rule 34 Production Request related to his opinions. ........................................................................ 16

4.    Under Fed. R. Evid. 702(b) and *Daubert,* Mr. Vuckovich's Opinions must be excluded because they deal only with facts helpful to SFGH Defendants' case, and ignore all others, and are therefore unreliable and inadmissible....................................... 17

      a.    Standards..........................................................................................................17

      b.    Mr. Vuckovich's admissions of incompleteness. ...................................................18

      c.    Mr. Vuckovich's Opinion that the attorney-client relationship between Signal Funding and the SFGH Defendants ended on October 27, 2017 fails to consider all of the facts, is wrong and is merely his attempt to tell the jury how to decide the case....................................................................................................................19

      d.    Mr. Vuckovich's waiver opinion is materially incomplete. ...................................21

      e.    Mr. Vuckovich's opinions about the poaching of employees and investors are also materially incomplete and unreliable.....................................................................21

      f.    The only remedy is to bar Mr. Vuckovich's testimony in its entirety. .................23

5.    Mr. Vuckovich's opinions usurp the role of the Court in announcing the principles of law and instructing the jury on them. ........................................................................ 24

6.      Mr. Vuckovich's proximate cause opinion is inadmissible. ............................................ 25

7.      Mr. Vuckovich's opinions about credibility, intent, and state of mind are inadmissible.  25

8.      Mr. Vuckovich is a "hired gun" who bases his opinions on an incomplete analysis, incomplete and misstated facts and mere speculation. .................................................... 26

CONCLUSION .................................................................................................................... 27

## TABLE OF AUTHORITIES

**Cases**

*American Int'l Adjustment v. Galvin*, 86 F.3d 1455 (7th Cir. 1996) ................................ 2

*Ashley v. Schneider Nat'l Carriers, Inc.*, No. 12-cv-8309 (N.D. Ill. June 2, 2016) ...................... 8

*Bader v. United Airlines, Inc.*, No. 14 C 2589  (N.D. Ill. June 4, 2018) ....................................... 8

*Barth v. Reagan*, 139 Ill. 2d 399, 564 N.E.2d 1196 (1990) ........................................................ 2

*Black v. Rodriguez*, No. 01 C 1721 (N.D. Ill. Sep. 10, 2002) ...................................................... 8

*Brooke Group Ltd. v. Brown Williamson Tobacco Corp.*, 509 U.S. 209 (1993) ........................... 8

*C&N Corp. v. Kane*, No. 12-C-0257 (E.D. Wis. Jan. 7, 2013) ..................................................... 12

*Chambers v. Nasco, Inc.*, 501 U.S. 32 (1991) ............................................................................. 15

*Chapman v. Maytag Corp.*, 297 F.3d 682 (7th Cir. 2002) ............................................................ 23

*Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635 (7th Cir. 2008) ......................................................... 9

*Clark v. Takata Corp.*, 192 F.3d 750 (7th Cir. 1999) ............................................................. 4, 26

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) ........................ 3, 17, 23, 24

*Doe v. White*, No. 08-CV-1287 (C.D. Ill. Sep. 22, 2009) ........................................................... 12

*Duff v. Grandberry*, No. 14 CV 8967 (N.D. Ill. Apr. 17, 2017) ................................................ 9

*El Camino Res., Ltd. v. Huntington Nat'l Bank*, 623 F. Supp.2d 863 (W.D. Mich. 2007) ............. 5

*Ferguson v. State of Ga.*, 365 U.S. 570 (1961) .......................................................................... 13

*Finley v. Marathon Oil Co.*, 75 F.3d 1225 (7th Cir. 1996) ......................................................... 14

*Fuesting v. Zimmer, Inc.*, 421 F.3d 528 (7th Cir. 2005) ............................................................ 18

*Garland v. Ford Motor Co.*, No. 2:12-00121 (M.D. Tenn. Mar. 26, 2015) .................................. 5

*Gen. Elec. Co.* v. *Joiner*, 522 U.S. 136 (1997) ..................................................................... 18

*Goodwin v. MTD Prods., Inc.*, 232 F.3d 600 (7th Cir. 2000) ............................................... 3

*Google, Inc. v. American Blind Wallpaper Factory, Inc.*, No. 03-cv-5340 JF (RS) (N.D. Cal. Feb. 8, 2006) ...................................................................................................................... 12

*Governmental Interinsurance Exchange v. Judge* , 221 Ill.2d 195, 850 N.E.2d 183 (2006) ....... 25

*H Guys, LLC v. Halal Guys Franchise, Inc.*, No. 19 C 4974 (N.D. Ill. July 1, 2020) ................. 13

*Hartford Accident & Indemnity Co. v. RJR Nabisco, Inc.*, 721 F. Supp. 534 (S.D.N.Y. 1989) ..... 6

*Hartman v. EBSCO Indus., Inc.*, 758 F.3d 810 (7th Cir. 2014) .................................................. 17

*Hoagland v. Sandberg, Phoenix Von Gontard, P.C.*, 385 F.3d 737 (7th Cir. 2003) ................. 2, 5

*Howell v. Morisy*, No. W2020-00343-COA-R9-CV (Tenn. Ct. App. Nov. 20, 2020) ................... 6

*In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 351 (N.D. Ill. 2005) .......................................... 12

*Indianapolis Colts v. Metropolitan Baltimore Football Club Ltd. Partnership*, 34 F.3d 410, (7th Cir. 1994) ...................................................................................................................... 27

*Int'l Longshoremen's Ass'n Local Union I 331 v. Int'l Longshoremen's Ass'n,* 909 F. Supp. 287(E.D. Pa. 1995) .............................................................................................................. 6

*Interiors, Ltd. of Rock Hill v. Piner*, No. 0:08-4018-JFA (D.S.C. Jan. 28, 2010) ...................... 17

*Jimenez v. City of Chi.*, 732 F.3d 710 (7th Cir. 2013) ................................................................ 2

*Jones v. Union Pac. R.R.*, No. 12 C 771 (N.D. Ill. Sep. 8, 2015) .............................................. 18

*Keach v. United States Trust Co.*, 419 F.3d 626 (7th Cir. 2005) .................................................. 14

*Krik v. Exxon Mobil Corp.*, 870 F.3d 669 (7th Cir. 2017) ............................................................ 17

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) .................................................................. 3

*Lectric Ltd. v. D G W, Inc.*, No. 15 C 7744 (N.D. Ill. Mar. 28, 2017) .......................................... 5

*Lees v. Carthage Coll.*, 714 F.3d 516 (7th Cir. 2013) ................................................................ 18

*Lewis v. Citgo Petroleum Corp.*, 561 F.3d 698 (7th Cir. 2009) .................................................... 3

*Long v. Steepro*, 213 F.3d 983 (7th Cir. 2000) .......................................................................... 15

*Markham Concepts, Inc. v. Hasbro, Inc.*, 196 F. Supp. 3d 345 (D.R.I. 2016) ............................... 6

*Martinez v. Cook Cnty.*, No. 11 C 1794 (N.D. Ill. Dec. 12, 2012) ................................................. 16

*Martinez v. Garcia*, No. 08 C 2601 (N.D. Ill. Nov. 5, 2012)......................................................... 18

*Metro. Life Ins. Co. v. Guardian Life Ins. Co. of Am.*, 2009 WL 1439717 (N.D. Ill. May 18, 2009) ........................................................................................................................................ 5

*Miller Uk Ltd. v. Caterpillar, Inc.*, No. 10-cv-03770 (N.D. Ill. Nov. 1, 2015) ............................ 8

*Minasian v. Standard Chartered Bank, PLC*, 109 F.3d 1212 (7th Cir. 1997).............................. 27

*Mizner Grand Condo. Ass'n, Inc. v. Travelers Prop. Cas. Co. of Am.*, 270 F.R.D. 698 (S.D. Fla. 2010) ......................................................................................................................................... 12

*Mizrachi v. Ordower*, No. 17 C 8036 (N.D. Ill. May 2, 2021) ..................................................... 26

*Nelson v. U.S.*, No. 17-1272 (7th Cir. Feb. 22, 2018)................................................................... 16

*NutraSweet Co. v. X-L Eng'g Co.*, 227 F.3d 776 (7th Cir. 2000)................................................. 14

*Olympia Equip. Leasing Co. v. W. Union Tel. Co.*, 797 F.2d 370, 382 (7th Cir. 1986)............... 27

*Owens v. Auxilium Pharms., Inc.*, 895 F.3d 971 (7th Cir. 2018).................................................. 17

*Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, 188 F. Supp. 3d 776 (N.D. Ill. 2016) . 17

*Porter v. Whitehall Labs. Inc.*, 9 F.3d 607 (7th Cir. 1993).......................................................... 23

*Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772 (7th Cir. 2016) ...................................................... 15

*Ransburg Corp. v. Champion Spark Plug Co.*, 648 F. Supp. 1040 (N.D. Ill. 1986) ...................... 6

*Reid v. Silver*, 354 F.2d 600 (7th Cir. 1965) ............................................................................... 13

*Renshaw v. Black*, 299 Ill. App. 3d 412, 701 N.E.2d 553 (5th Dist. 1998) ................................ 25

*Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316 (7th Cir. 1996) ............................................................. 3

*S.V. Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771 (7th Cir. 2017)................................... 17

*Salgado v. GMC*, 150 F.3d 735 (7th Cir. 1998)...................................................................... 9, 14

*Santacroce v. Neff*, 134 F. Supp. 2d 366 (D. N.J. 2001)............................................................... 5

*Smith v. Ill. Dep't of Transp.*, 2018 WL 3753439 (N.D. Ill. Aug. 8, 2018), *aff'd*, 936 F.3d 554 (7th Cir. 2019)........................................................................................................................... 18

iv

*Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753 (7th Cir. 2013) ....................................................... 18

*SWS Financial Fund A v. Salomon Bros.*, 790 F. Supp. 1392 (N.D. Ill. 1992) ............................ 5

*Tyus v. Urban Search Management*, 102 F.3d 256 (7th Cir. 1996) ...................................... 3, 4, 26

*U.S. v. Basham*, 918 F. Supp. 2d 787 (C.D. Ill. 2013) ................................................................. 5

*U.S. v. Brown*, 871 F.3d 532 (7th Cir. 2017) ............................................................................. 20

*U.S. v. Gallardo*, 497 F.3d 727 (7th Cir. 2007) ........................................................................ 23

*U.S. v. Noel* , 581 F.3d 490 (7th Cir. 2009) ............................................................................... 21

*U.S. v. Schiro*, 679 F.3d 521 (7th Cir. 2012) ............................................................................. 24

*U.S. v. Vest*, 116 F.3d 1179 (7th Cir. 1997) ............................................................................... 26

*Unified Sewerage Agency, Etc. v. Jelco Inc.*, 646 F.2d 1339 (9th Cir. 1981) ............................... 6

*ValuePart, Inc. v. Clements*, 2006 WL 2252541 (N.D. Ill. Aug. 2, 2006) ............................... 5, 6

*Weisgram v. Marley Co.*, 528 U.S. 440 (2000) ............................................................................. 8

*West v. Waymire,* 114 F.3d 646 (7th Cir. 1997) ........................................................................... 2

## Rules

Fed. R. Civ. Pro 26(a)(2)(B)(ii) ................................................................................................ 9, 19

Fed. R. Civ. Pro. 26(a)(2)(B)(vi) ............................................................................................. 9, 13

Fed. R. Civ. Pro. 34(b)(2)(A) .................................................................................................. 12, 16

Fed. R. Civ. Pro. 34(b)(2)(B) .................................................................................................. 12, 16

Fed. R. Civ. Pro. 34(b)(2)(E) ....................................................................................................... 12

Fed. R. Civ. Pro. 37(d)(1)(A)(ii) .................................................................................................. 16

Fed. R. Civ. Pro. 37(d)(1)(B) ....................................................................................................... 16

Fed. R. Civ. Pro. 37(d)(3) ............................................................................................................ 17

Fed. R. Evid. 403 .......................................................................................................................... 20

Fed. R. Evid. 702 .................................................................................................................... passim

Fed. R. Evid. 704(b) ..................................................................................................................... 20

Local Rule 37.2 (N.D. Ill.) ........................................................................................ 16


**Other Authorities**

Attorney Guide to Hyperlinking in the Federal Courts (for Microsoft Word users) ..................... 1

Fed. R. Evid. 702 advisory committee's note (2000 Amendments.) ............................................. 3

Fed. R. Evid. 704 advisory committee's note (1972 Amendments) ............................................. 21

Illinois Rule of Professional Conduct 1.7 ............................................................... passim

Illinois Rule of Professional Conduct 1.9 .............................................................. 8, 24

Plaintiffs/Counter-Defendants Signal Financial Holdings LLC and Signal Funding LLC (Signal or Plaintiffs) respectfully move this Court to bar or substantially limit the testimony of Adrian Vuckovich, the SFGH Defendants' malpractice expert, as disclosed by his two expert reports attached as Exhibits 1 and 2.[1] (Ex. 1: 1st Vuckovich Rpt.; Ex. 2: 2d Vuckovich Rpt.)

### FACTUAL AND PROCEDURAL HISTORY

The parties' expert reports were due on March 15, 2021.

On March 1, well in advance of that disclosure date, Plaintiffs served an extensive Production Request on the SFGH Defendants requiring the production by April 1 of all materials that their anticipated expert relied upon as well as materials showing the expert's compensation. (Ex. 3: 3/1/21 Prod. Rqsts.).)

On March 15, the SFGH Defendants served the malpractice expert report of Adrian Vuckovich. Later that day, Plaintiffs served on SFGH Defendants a subpoena for the production of documents and for Mr. Vuckovich's appearance at a deposition on April 6, 2021 at 10 a.m. (Ex. 4: 3/15/21 Doc. Subp.)

Plaintiffs had great difficulty scheduling Mr. Vuckovich's deposition, and it was finally rescheduled for May 17, the day before the discovery cutoff. (Ex. 5: Notice of Resched. Vuckovich Dep.)

But the SFGH Defendants stalled their production of the Vuckovich materials until May 13, one business day prior to his rescheduled deposition and one and a half months after the due date, and even then failed to produce his compensation materials. This production included 8,246 pages of documents plus 8,705 pages of depositions, The production was not accompanied by the

---

[1] This Memorandum contains links to cited authorities pursuant to the Court's reference to the Attorney Guide to Hyperlinking in the Federal Courts (for Microsoft Word users).

written responses to the March 1 Production Requests required by Rule 34(b)(2)(A) and (B), and those written responses were never provided.

Moreover, on that day, May 13, they produced a Supplemental Report by Mr. Vuckovich.

By these tactics, Plaintiffs were substantially impaired in their ability to investigate the basis of Mr. Vuckovich's Opinion. This prejudice was exacerbated by the failure of the SFGH Defendants to produce the compensation documents until the middle of Mr. Vuckovich's deposition.

This is yet another example of the SFGH Defendants' inability and refusal to play by the rules.

Mr. Vuckovich's testimony and report should be barred.

## APPLICABLE STANDARDS

"Expert testimony is crucial for defending as well as prosecuting a legal malpractice action." *American Int'l Adjustment v. Galvin*, 86 F.3d 1455, 1461 (7th Cir. 1996). Except in limited circumstances (not present here),[2] expert testimony is a required part of prosecuting and defending a legal malpractice case. *Barth v. Reagan*, 139 Ill. 2d 399, 564 N.E.2d 1196 (1990) (under Illinois law, the standard of care for a legal malpractice claim ordinarily must be established through expert testimony).

But the scope of that testimony is simply limited to the applicable standard of care and identifying departures from them. *Jimenez v. City of Chi.*, 732 F.3d 710, 721 (7th Cir. 2013) (quoting *West v. Waymire*, 114 F.3d 646, 652 (7th Cir. 1997)

---

[2] "See, *e.g. Hoagland v. Sandberg, Phoenix Von Gontard, P.C.*, 385 F.3d 737, 743 (7th Cir. 2003) ("A suit for legal malpractice under Illinois law … requires (unless the lawyer's breach of duty is obvious even to a layperson) … expert testimony regarding the standard of care or loyalty that the lawyer is alleged to have violated.)" (citing *Barth*).

And in federal court, expert testimony in a legal malpractice case must meet the standards of Federal Rule of Evidence 702, as amplified by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). Just as the analytical framework of *Daubert* for assessing expert testimony applies to experts in the hard sciences, it also applies to social science experts, the type of expert involved here. *Tyus v. Urban Search Management*, 102 F.3d 256, 263 (7th Cir. 1996).

The linchpin of the *Daubert/Kumho* analysis is reliability. This Court must determine whether the evidence is genuinely based on proper methodology, data, and analysis, as distinct from mere speculation, even if offered by an otherwise qualified expert. *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 318 (7th Cir. 1996). To be admissible, legal malpractice experts' opinions must be grounded in proper analysis and legal and factual bases. They may not offer opinions that are merely subjective belief or unsupported conjecture. *Lewis v. Citgo Petroleum Corp.*, 561 F.3d 698, 704-05 (7th Cir. 2009) (citing *Daubert*, 509 U.S. at 589-90, and *Goodwin v. MTD Prods., Inc.*, 232 F.3d 600, 608-09 (7th Cir. 2000).

As the proponents of Vuckovich's expert testimony, the SFGH Defendants bear the burden of demonstrating that his opinions satisfy the *Daubert* standards. *Lewis*, 561 F.3d at 704-05. (citing Fed. R. Evid. 702 advisory committee's note (2000 Amendments.) ("Consistently with *Kumho*, the Rule as amended provides that all types of expert testimony present questions of admissibility for the trial court in deciding whether the evidence is reliable and helpful. Consequently, the admissibility of all expert testimony is governed by the principles of Rule 104(a). Under that Rule, the proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence.")).

Finally, "qualifications alone do not suffice. A supremely qualified expert cannot waltz

into the courtroom and render opinions unless those opinions are based upon some recognized scientific method and are reliable and relevant under the test set forth by the Supreme Court in *Daubert." Clark v. Takata Corp.*, 192 F.3d 750, 759 n. 5 (7th Cir. 1999).

"In all cases, however, the district court must ensure that it is dealing with an expert, not just a hired gun." *Tyus*, 102 F.3d at 263.

Mr. Vuckovich flunks these tests.

## ARGUMENT

1. **Vuckovich's opinions are irrelevant because they do not account for the fact that Signal is to be treated as a current client even after the SFGH Defendants dropped it as a client like a "hot potato" on October 27, 2017.**

Mr. Vuckovich states that the Signal-SFGH attorney-client relationship ended on October 27, 2017, when Defendant Friedland terminated it with his "I choose Farva" email to Signal's General Counsel. (Ex. 1: 1st Vuckovich Rpt., pp. 2, 4, 6, 9; Ex. 2: 2d Vuckovich Rpt., pp. 3, 4, 7, 9).[3] Mr. Vuckovich's blanket opinions about the absence of conflict under Illinois Rule of Professional Conduct 1.7 stop on that date.

But a key issue in this case is whether the SFGH Defendants' actions after October 27 were improper conflicts based on Illinois Rule of Professional Conduct 1.7 governing conflicts with current clients. Stated another way, the issue is the consequences of the SFGH Defendants dropping Signal like a "hot potato." The controlling principle is simple: When the "hot potato" doctrine applies, *the former client is treated as a current client for the client conflicts analysis*.

This issue is no surprise because this Court's Opinion denying dismissal [Ex. 6: ECF 295,

---

[3] Mr. Vuckovich's Reports: "SFGH stopped representing Signal on October 27, 2017 per the email of Friedland to Gehres." (Ex. 1: 1st Vuckovich Rpt., p. 4; Ex. 2: 2d Vuckovich Rpt., p. 4.) "SFGH appropriately withdrew from representation of Signal on October 27, 2017." (Ex. 1: 1st Vuckovich Rpt., p. 9.) "The SFGH (*sic*) appropriately withdrew from representation of Signal on October 27, 2017." (Ex. 2: 2d Vuckovich Rpt., p. 9).

p. 9] cited *Hoagland v. Sandberg, Phoenix Von Gontard, P.C*, 385 F.3d at 744 (7th Cir. 2004), that "[a]n attorney throwing one client to the wolves to save the other is malpractice.") That is precisely what happened here.

"[C]ourts universally hold that a law firm will not be allowed to drop a client in order to resolve a direct conflict of interest, thereby turning a present client into a former client." *El Camino Res., Ltd. v. Huntington Nat'l Bank*, 623 F. Supp.2d 863, 868 (W.D. Mich. 2007) (collecting cases); *Garland v. Ford Motor Co.*, No. 2:12-00121, CASETEXT at *11, p.  (M.D. Tenn. Mar. 26, 2015) (also quoting *Metro. Life Ins.*, 2009 WL 1439717, at *3).

Thus, "a lawyer is barred from dropping a less lucrative client like a 'hot potato' when [a] more lucrative client [comes] along." *Lectric Ltd. v. D G W, Inc.*, No. 15 C 7744, CASETEXT at *6, p. 3 (N.D. Ill. Mar. 28, 2017) (copy attached) (citing *Metro. Life Ins. Co. v. Guardian Life Ins. Co. of Am.*, 2009 WL 1439717, at *3 (N.D. Ill. May 18, 2009). *ValuePart, Inc. v. Clements*, 2006 WL 2252541, at *2 (N.D. Ill. Aug. 2, 2006) (copy attached).

"This doctrine clearly applies to those instances in which a lawyer drops a current client, for which the representation continued, in order to turn that client into a former client as a means of curing a simultaneous representation of adverse interests." *Metro. Life Ins. Co.*, 2009 WL 1439717, at *5 (citations omitted). *See also SWS Financial Fund A v. Salomon Bros.*, 790 F. Supp. 1392, 1399 (N.D. Ill. 1992) (an express termination of a client like a "hot potato" in order to obtain the more lucrative business is invalid as a violation of a lawyer's duty of loyalty); *U.S. v. Basham*, 918 F. Supp. 2d 787, 789 (C.D. Ill. 2013) ("An attorney may not drop one client like a 'hot potato' "in order to avoid a conflict with another, more remunerative client."); *Santacroce v. Neff*, 134 F. Supp. 2d 366, 367 (D. N.J. 2001) (holding that "[t]he 'Hot Potato Doctrine' has evolved to prevent attorneys from dropping one client like a 'hot potato' to avoid conflict with another, more remunerative client."); *Int'l Longshoremen's Ass'n Local Union I 331 v. Int'l Longshoremen's Ass'n*, 909 F. Supp.

287, 293 (E.D. Pa. 1995). *Ransburg Corp. v. Champion Spark Plug Co.*, 648 F. Supp. 1040, 1044 (N.D. Ill. 1986) (client treated as current client even though terminated when conflict arose); *see also Unified Sewerage Agency, Etc. v. Jelco Inc.*, 646 F.2d 1339, 1345 n.4 (9th Cir. 1981) (attorney cannot convert a present client into a 'former client' by choosing when to cease to represent the disfavored client."); *Hartford Accident & Indemnity Co. v. RJR Nabisco, Inc.*, 721 F. Supp. 534, 540 (S.D.N.Y. 1989) ("no court should condone an attorney attempting to improperly eliminate a conflict by turning an existing client into a former client by 'firing' the disfavored client.); *Howell v. Morisy*, No. W2020-00343-COA-R9-CV, CASETEXT at *6, p. 5 (Tenn. Ct. App. Nov. 20, 2020) (copy attached)

"'Pursuant to this universal rule, the status of the attorney/client relationship is assessed at the time the conflict arises….'" *El Camino Res., 623 F. Supp. 2d at 868* (quoting *Unified Sewerage Agency*, 646 F. 2d at 1345 n. 4. When the "hot potato" doctrine applies, the former client is treated as a current client for the client conflicts analysis. *Markham Concepts, Inc. v. Hasbro, Inc.*, 196 F. Supp. 3d 345, 349 (D.R.I. 2016) ("Accordingly, for the purposes of this Motion, Hasbro is GT's current client."); *ValuePart, Inc.*, 2006 WL 2252541, at *2, Slip Opinion, pp. 3-4 (copy attached) A lawyer "may not simply [choose] to drop one client 'like a hot potato' in order to treat it as though it were a former client for the purpose of resolving a conflict of interest dispute." "A lawyer's withdrawal from representing a client only renders the client a former client when: (1) it occurs at a time when the lawyer and the client had contemplated the end of the representation; and (2) the lawyer's primary motivation for terminating the relationship was **not** his desire to represent the new client." *Id*.

That is precisely what happened here, and *ipso facto* is malpractice as a matter of law.

These facts are completely undisputed, admitted by the SFGH Defendants and based on

their own words and actions: SFGH Defendants began representing Defendant Jafri and her entities at the very beginning of September 2017 while it was still counsel for Plaintiff Signal Funding. On October 27, a few days after Ed Gehres, Signal Funding's General Counsel, questioned Defendant Friedland about that apparent conflict, Friedland dropped Signal in favor of Defendant Jafri both as a means of curing a simultaneous representation of adverse and because of his impression that she would be a more lucrative client. Friedland's October 27 email to Signal's General Counsel stated:

> Because I anticipate that her future endeavors may not be completely unrelated to the space in which Signal operates, I feel it necessary to choose between Signal and Farva. While not an ethical conflict, it is a business conflict which would trouble me if I were either client.
>
> In short, and with nothing but the utmost respect for you and for Signal, I choose Farva…. (Ex. 7: SFGH Dfs' Dep. Ex. 24; 10/27/21 Friedland to Gehres Email; Bates No. 2nd Supp SFGH 008401.)

Friedland's deposition explanation for the termination was as follows:

> And so Mr. Gekas asked why I chose Farva.· *One ·reason was just that, the reason that was stated in this ·email*.· But it had also become abundantly clear to me by October 27th that, you know, the client was questioning·our conduct.·And so I certainly didn't think there was a good future there.
>
> I also felt some excitement to work with a -- you know, an interesting entrepreneur. (Ex. 8: Friedland Dep. Excerpts, p. 217.)

So there is no dispute that Defendant Friedland improperly dropped Signal to (i) avoid a conflict, and (ii) did so for business reasons, namely to represent a new, potentially more lucrative client. Therefore, the "hot potato" doctrine applies and Plaintiffs must be treated as a current client after October 27 for the conflict analysis.

Yet, Mr. Vuckovich does not mention, analyze or offer an expert opinion on this testimony, the "hot potato" doctrine, any of these undisputed facts, or the application of Rule 1.7 after October 27. His analysis on the SFGH Defendants' actions after October 27 is grounded only in Illinois

Rule of Professional Conduct 1.9 dealing with former clients and is therefore irrelevant. (Ex. 1: 1st Vuckovich Rpt., pp. 6-9; Ex. 2: 2d Vuckovich Rpt., pp. 7-9). His failure to deal with Rule 1.7 in the aftermath of the October 27 email makes his testimony about Rule 1.9 during that time period irrelevant, unreliable, and materially incomplete. It is therefore inadmissible. *Miller Uk Ltd. v. Caterpillar, Inc.*, No. 10-cv-03770, CASETEXT at *26, pp. 14-15 (N.D. Ill. Nov. 1, 2015) (copy attached) (expert opinion on justification to terminate contract inadmissible as irrelevant since right to terminate was undisputed); *Black v. Rodriguez*, No. 01 C 1721, CASETEXT at *1, p. 3 (N.D. Ill. Sep. 10, 2002) (copy attached) (expert's opinion on probable cause irrelevant because undisputed and a question of law for the Court.); *Ashley v. Schneider Nat'l Carriers, Inc.*, No. 12-cv-8309, CASETEXT at *21, p. 11-12 (N.D. Ill. June 2, 2016) (copy attached) (expert opinion about stopping on ramp irrelevant because it was undisputed that defendant stopped on shoulder of the highway); *Bader v. United Airlines, Inc.*, No. 14 C 2589, CASETEXT at *21-22, p. 11. (N.D. Ill. June 4, 2018) (copy attached) (opinion inadmissible that United initially agree to plan when it was undisputed that it had begun to implement it.)

Finally, because of his failure to review and opine on sufficient facts, the admission of this testimony will be insufficient to support a jury verdict in favor of the SFGH Defendants on the malpractice. "When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict." *Brooke Group Ltd. v. Brown Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993). *See also Weisgram v. Marley Co.*, 528 U.S. 440, 454-56 (2000) (permitting a court of appeals to render judgment as a matter of law when inadmissible expert testimony was erroneously admitted and the properly admitted evidence was insufficient to support the verdict).

This opinion should be excluded now to avoid further pointless proceedings.

**2.      Mr. Vuckovich and SFGH failed to  comply with the mandatory disclosure requirements of Rule 26(a)(2)(B)(ii) & (vi), requiring exclusion of Mr. Vuckovich's testimony.**

Mr. Vuckovich submitted two reports, an original on March 15, 2021, and a Supplemental late on May 13, the latter four days before his May 17 deposition and five days before the May 18 discovery cutoff.

The two Reports have material differences. He explained that "the second Report is a supplemental. So whatever is in the first report still stands." (Ex. 9: Vuckovich Dep. Excerpts, p. 24.)

Whether separate or combined, they violate the disclosure requirements of Rule 26(a)(2)(B)(ii) & (vi), requiring this Court to exclude Mr. Vuckovich's Reports in their entirety.

**a.      The Reports do not adequately describe the facts or data Mr. Vuckovich considered in forming his opinions as required by Rule 26(a)(2)(B)(ii).**

The expert report provisions of Rule 26 "mandate[] a complete and detailed report." *Ciomber v. Coop. Plus*, *Inc.*, 527 F.3d 635, 642 (7th Cir. 2008). A complete report is required so that "opposing counsel is not forced to depose an expert in order to avoid ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources." *Salgado v. GMC*, 150 F.3d 735, 741 n.6 (7th Cir. 1998).[4] "The phrase 'facts or data' is interpreted broadly "to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients." *Duff v. Grandberry*, No. 14 CV 8967, CASETEXT at *3, p. 2 (N.D. Ill. Apr. 17, 2017) (copy attached) ("[T]he report does not sufficiently describe the 'facts or data considered' by [the expert].")

---

[4] Moreover, Rule 26 "does not allow parties to cure deficient expert reports by supplementing them with later deposition testimony." *Ciomber*, 527 F.3d at 642.

9

*The Omissions in the Reports* – This is the first Report's description of the "Materials Reviewed and Relied Upon":

> In reaching my opinions in this case, I reviewed the majority of the pleadings in the matter, the depositions and exhibits to the same, the production of the parties, the Court Order on the motion to dismiss and Illinois Rules of Professional conduct (*sic*). I also relied on my education and experience in reaching my opinions. (Ex. 1: 1ˢᵗ Vuckovich Rpt., p. 1.)

But the body of that Report cites only three depositions of Plaintiffs' officers[5] of the seven depositions taken by March 15, the date of the Report. (Ex. 10: Deposition List.) And, although that first Report refers to certain billing entries in the SFGH bills to the Jafri Defendants (Ex. 1: 1ˢᵗ Vuckovich Rpt., p. 5), there are no citations to those bills or those entries. Of the over thirty thousand of pages of documents produced by the parties, the Report cites to only six consisting of only seventeen pages.[6] Finally, there is no description of the "majority of pleadings" Mr. Vuckovich reviewed.

The Supplemental Report's description of the "Materials Reviewed and Relied Upon" in part tracks the original verbatim but adds a new word and a new sentence, italicized as follows:

> In reaching my opinions in this case, I reviewed the majority of the pleadings in the matter, the depositions, *billings* and exhibits to the same, the production of the parties, the Court Order on the motion to dismiss and Illinois Rules of Professional conduct (*sic*). I also relied on my education and experience in reaching my opinions. *In addition to those materials reviewed and relied upon in my initial Report, I have also relied upon the depositions taken since my initial Report was disclosed, including but not limited to, Johnathan* (sic) *Friedland, Vanessa Schoenthaler, Elizabeth Vandesteeg and Ethan Cohen.* (Ex. 2: 2d Vuckovich Rpt., p. 1.) (italics supplied).

---

[5] The March 15 Report cites only brief excerpts from three depositions: the first of Ed Gehres, Signal's General Counsel (Ex. 1: 1ˢᵗ Vuckovich Rpt., pp. 3, 8), and the second and third of two principals of 777 Partners, Plaintiff Signal's parent, who were not involved in any way in the events of this case: three cites to the deposition of Steve Pasko (*id.,* pp. 1, 2), and four to the deposition of Josh Wander (*id.,* pp. 4, 8).

[6] The following documents are cited on pages 2-3 of the Report: SFGH 008401, 2nd Supp SFGH 008291, 2nd Supp SFGH 008420, 2nd Supp SFGH 011488-89, 2nd Supp SFGH011514, & 2nd Supp SFGH 012574-81. They are attached as Exhibit 11 hereto. (Ex. 11: Documents cited in Vuckovich Reports.)

But this Supplemental Report did not cure the deficiencies of the original. The very few citations to depositions and documents were identical.[7] Although the depositions of the individual SFGH Defendants are listed as reviewed, there are no specific page citations (Ex. 2: 2d Vuckovich Rpt., p. 1), and the body of the Report only refers to testimony of Defendant Friedland in one place with this very odd statement: "Mr. Friedland testified he considered whether there was a 1.7 contract (*sic*)," (*id.*, p. 5) also with no citation to that specific testimony. There are no citations or references to the depositions of the other individual SFGH Defendants Schoenthaler, Vandesteeg, and Cohen.[8]

*Defendants' and Vuckovich's Failure to 'Disclos[e] Material Considered'* – Plaintiffs timely served Production Requests on the SFGH Defendants and a Document Subpoena on Mr. Vuckovich requiring them to produce the materials he reviewed and his payment records. (Ex. 3: 3/1/21 Prod. Rqsts.; Ex. 4: 3/15/21 Doc. Subp.) Defendants' responses were due by March 31; Mr. Vuckovich's by April 6.

As they have throughout the case,[9] the SFGH Defendants stalled their compliance with those discovery requests. Rather than responding by the required dates, Defendants and Mr. Vuckovich ignored those requests and stalled their production until late Thursday, May 13, one business day before Plaintiff's May 17 deposition of Mr. Vuckovich and five days before the May

---

[7] *See* footnote 5 on page 11 and accompanying text. The May 13 Supplemental Report contains the same citations to those three depositions: the first of Ed Gehres, Signal's General Counsel (Ex. 2: 2d Vuckovich Rpt., pp. 3, 8), and the second and third of two principals of 777 Partners, Plaintiff Signal's parent, who were not involved in any way in the events of this case: three cites to the deposition of Steve Pasko (*id.*, p. 2), and four to the deposition of Josh Wander (*id.*, pp. 4, 8). The Supplemental Report at pages 2-3 cites only the same 17 pages of documents cited in the original Report. (Ex. 11: Documents cited in Vuckovich Reports.)

[8] There was a total of 840 pages of deposition testimony by the four individual SFGH Defendants. (Ex. 13: Combined SFGH Dfs Dep. Trs. (Condensed).)

[9] *See, e.g.*, ECF 594: Pls' Appeal Mem. from Mag. Orders Denying Pls' Mots. To Compel, *passim*.

18 discovery cutoff date. (Ex. 12: 5/13/21 Prod. Email & Letter.)

The "production" was massive: documents numbering 8,246 pages; depositions and exhibits totaling another 8,705 pages. (Ex. 14: Addit. Hough Decl.) Moreover, the SFGH Defendants did not provide the detailed written responses to each of Plaintiffs' production requests as required by Rule 34(b)(2)(A) and (B).[10] It was simply a "document dump," yet another example of the SFGH Defendants' refusal to play by the rules. Defendants are not at liberty under Rule 34 to dump massive amounts of documents on their adversaries that have no logical order and demand that they try to find what they are looking for. *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 351, 363 (N.D. Ill. 2005); *Doe v. White*, No. 08-CV-1287, CASETEXT at *7, p. 3 (C.D. Ill. Sep. 22, 2009) (copy attached); *C&N Corp. v. Kane*, No. 12-C-0257, CASETEXT at *8, p. 4 (E.D. Wis. Jan. 7, 2013) (copy attached) ("Parties may not simply dump disorganized documents on their opponents in an effort to evade their discovery obligations.")

Finally, both SFGH and Vuckovich failed to produce a single document showing the compensation paid to Mr. Vuckovich.

These failures violate Rule 26(a)(2)(B)(vi)'s disclosure requirements.

> **b.** **The Vuckovich Reports do not contain a "statement of the compensation**

---

[10] "The party to whom the request is directed must respond in writing within 30 days after being served …." Rule 34(b)(2)(A). Under Rule 34(b)(2)(B), the responding party must provide a written response to each item. The only written response Plaintiffs received was a one-sentence letter from the SFGH Defendants Counsel with a link to the cloud storage site for the document dump. (Ex. 12: 5/13/21 Prod. Email & Letter.)

Rule 34(b)(2)(E) requires a party responding to a request for production of documents to "produce documents as they are kept in the usual course of business or . . . organize and label them to correspond to the categories in the request…." Because the documents produced are litigation and discovery documents and are supposed to respond to requests related to materials considered by the expert Vuckovich, they obviously do not and cannot fall within the "ordinary course of business" category. *Cf Google, Inc. v. American Blind Wallpaper Factory, Inc.*, No. 03-cv-5340 JF (RS), CASETEXT at *6 n.3, p. 4 (N.D. Cal. Feb. 8, 2006) (copy attached). ("The more reasonable reading of Rule 34, however, is that the "course of business" to which it refers concerns a party's substantive business operations.") *Mizner Grand Condo. Ass'n, Inc. v. Travelers Prop. Cas. Co. of Am.*, 270 F.R.D. 698, 701 (S.D. Fla. 2010) (documents acquired during litigation or investigation not kept in the ordinary course of business).

**to be paid for the study and testimony in the case," as required by Rule 26(a)(2)(B)(vi).**

Next, the Vuckovich Reports do not contain a statement of the compensation paid for his study and testimony. (Exs. 1 & 2: Vuckovich Rpts., *passim*.)

Plaintiffs requested those materials on March 1 and 15, but they were produced only in the midst of Plaintiffs' May 17 deposition of Mr. Vuckovich and only after yet another request. (Ex. 9: Vuckovich Dep. Excerpts, pp. 20, 22; Ex. 15: Pls' Dep. Ex. PX 149, Vuckovich Bills.)[11]

The prejudice from that tardy production is evident. Producing an expert's compensation documents in the middle of the expert's deposition, the day before the discovery cutoff, is objectively unreasonable and presumptively prejudicial. Plaintiffs were denied the opportunity to examine the bills in preparation for the deposition, and consult with their own malpractice expert about them and their reasonableness, obviously important aspects of their investigation and the search for truth that discovery is supposed to be. *H Guys, LLC v. Halal Guys Franchise, Inc.*, No. 19 C 4974, CASETEXT at *11, p. 6 (N.D. Ill. July 1, 2020) (discovery's ultimate purpose is to help the parties to arrive at the truth. (citing *Ferguson v. State of Ga.*, 365 U.S. 570 (1961), and *Reid v. Silver*, 354 F.2d 600, 608 (7th Cir. 1965)")

> **c.    Under Rule 37(c)(1), the exclusion of Mr. Vuckovich's testimony is automatic.**

Rule 37(c)(1) states that if a party timely fails to provide the information required by Rule 26, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *NutraSweet*

---

[11]    MR. GEKAS:· Did you send me those bills, Amir?

MR. TAHMASSEBI:· Yeah.· I'm working on it right now here.· I just got it…..·(*Id.*, p. 20).

****

MR. TAHMASSEBI:· Chris, I just forwarded you the invoices that we received from Mr. Vuckovich.·There are two of them. (Ex. 9: Vuckovich Dep. Excerpts, pp. 20, 22)

*Co. v. X-L Eng'g Co.*, 227 F.3d 776, 785-86 (7th Cir. 2000). The sanction of exclusion is "automatic and mandatory unless the party to be sanctioned can show that its violation of Rule 26(a) was either justified or harmless." *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996). The decision to exclude expert testimony is committed to the sound discretion of this Court. *Salgado*, 150 F.3d at 739 (7th Cir. 1998). The decision to exclude need not be based upon specific findings of fact, but rather should be guided by these factors: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the party's ability to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date. *Keach v. United States Trust Co.*, 419 F.3d 626, 640 (7th Cir. 2005).

Based on all four of these factors, that exclusion should be applied to Mr. Vuckovich.

More specifically, there is no question about the prejudice to Plaintiffs from the SFGH's Defendants' and Mr. Vuckovich's failure to make complete and timely disclosures. His Report does not contain the specification of the materials he reviewed, and the tardy document dump only one business day before his deposition and only two business days before discovery closed prevented Plaintiffs from a careful evaluation and preparation for his deposition that could not be cured in the short time left until the discovery door slammed shut. The prejudice continues to the present and onward to future proceedings, especially summary judgment and trial. Plaintiffs have no way to determine which, if any, of the production materials Mr. Vuckovich considered, relied upon, or rejected. The same prejudice applies to the mid-deposition production of Mr. Vuckovich's compensation documents. These failures will disrupt the trial because of the substantial likelihood of persistent and repeated objections by Plaintiffs that critical elements of Mr. Vuckovich's testimony were not disclosed since inevitably, these defendants and this expert will seek to embellish the detail of his opinion and the materials he relied upon.

The violations were committed in bad faith, which in this context means "bad faith by delaying or disrupting the litigation." *Chambers v. Nasco, Inc.*, 501 U.S. 32, 46 (1991). The standard for evaluating bad faith is an objective one. *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016) ("[f]ault in this context suggests objectively unreasonable behavior") (citing *Long v. Steepro*, 213 F.3d 983, 987 (7th Cir. 2000).

There is no justification for these deficiencies. Mr. Vuckovich is an experienced federal court litigator as part of his regular legal practice, unrelated to his supposed expertise on the professional responsibility of lawyers. PACER shows he has appeared in eighty-five cases in this Court. (Ex. 17: Pls' Dep. Ex. PX 141 – PACER Printout; Ex. 9: Vuckovich Dep. Excerpts, pp. 33-35.) In addition, he was a defendant in this Court in his own legal malpractice case in which he was represented by the same defense attorneys who appear for the SFGH Defendants. *Bill Busbice v. Adrian Vuckovich, et al.,* No. 17-cv-1740 (N. D. Ill.) (Hon. Andrea R. Wood, Presiding). Counsel for the SFGH Defendants is himself an experienced and skilled federal court litigator who knows full well the expert disclosure requirements of Rule 26 and, unfortunately, how to skirt them. (Ex. 16: Pls' Dep. Ex. PX 142 – PACER Printout; Ex. 9: Vuckovich Dep. Excerpts, pp. 33-35.) In Mr. Vuckovich's own legal malpractice case in which he was represented by the SFGH Defendants' Counsel, there was also an expert witness dispute that in part involved the assertion they did not timely disclose the compensation rate of Mr. Vuckovich's expert. (Ex. 18: PACER ECF 192 – Decl. of Paul Gale – *Busbice v. Vuckovich,* Case No. 17-cv-1640 (N.D. Ill.).) No matter how that dispute was resolved, this shows that Mr. Vuckovich and his counsel herein are fully aware of the problems arising from deficient Rule 26 expert disclosures.

Nor is the failure of disclosure harmless. The prejudice from the tardy production of the bills is blatant. Producing compensation documents in the middle of an expert's deposition, the

day before the discovery cutoff, is presumptively prejudicial, although no prejudice need be shown given the two materially incomplete reports. The failure to adequately disclose the facts and data Mr. Vuckovich prevents Plaintiffs from examining the basis of his opinion. Neither prejudice can now be cured. Discovery is closed and was severely restricted by the Magistrate Judge. There is no way for Plaintiffs to adequately investigate these failed disclosures.

So the question presented to the Court is whether these incomplete reports that did not disclose the facts or data reviewed or the expert's compensation, and the tardy discovery and subpoena responses shortly before the expert's deposition and discovery cutoff date, were reasonable.

They were not. Automatic exclusion of Mr. Vuckovich's report and testimony is required.

### 3. Rule 37(d)(1)(A)(ii) requires the exclusion of Mr. Vuckovich's testimony because the SFGH Defendants failed to serve a written response to Plaintiffs' Rule 34 Production Request related to his opinions.[12]

Rule 34(b)(2)(A) & (B) are clear. "[A] party must respond in writing to a request for documents within 30 days of being served." *Martinez v. Cook Cnty.*, No. 11 C 1794, CASETEXT at \*5, p. 3 (N.D. Ill. Dec. 12, 2012) (copy attached).

Under Rule 37(d)(1)(A)(ii) and (d)(3), a party who fails to comply with those requirements is subject to the full panoply of sanctions of Rule 37(b)(2)(A)(i)-(vi), up to and including dismissal or default. *See Nelson v. U.S.*, No. 17-1272, CASETEXT (7th Cir. Feb. 22, 2018) (copy attached). As detailed above, Defendants failed to comply. The sanction requested here is the exclusion of Mr. Vuckovich's testimony as provided in Rule 37(b)(2)(A)(ii), a remedy well fitted to the violation. *Interiors, Ltd. of Rock Hill v. Piner*, No.:0:08-4018-JFA, CASETEXT (D.S.C. Jan. 28,

---

[12] As required by Rule 37(d)(1)(B) and Local Rule 37.2, undersigned counsel certifies that on August 19, 2021, he conferred by telephone with Mr.. Tahmassebi, Counsel for the SFGH Defendaants, seeking his agreement to this relief, but was unable to obtain his agreement without court action.

2010) (copy attached) (evidence regarding unproduced documents barred).

For the same reasons explained above regarding the automatic sanctions of Rule 34(c)(1), the discretionary exclusion of Mr. Vuckovich's testimony based on the SFGH Defendants' failure to comply with the most basic of federal litigation rules and procedures is undoubtedly warranted.

Pursuant to Rule 37(d)(3), Plaintiffs also ask for an award of attorney's fees occasioned by this Motion, the preparation and issuance of the Rule 34 requests and subpoena for the Vuckovich materials, and the Vuckovich deposition. Notwithstanding that Rule's inclusion of the word "must," the award of fees "instead of or in addition to" the other permitted sanctions is discretionary. *Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, 188 F. Supp. 3d 776, 789 (N.D. Ill. 2016).

**4.    Under Fed. R. Evid. 702(b) and *Daubert*, Mr. Vuckovich's Opinions must be excluded because they deal only with facts helpful to SFGH Defendants' case, and ignore all others, and are therefore unreliable and inadmissible**

**a.    Standards.**

In *Daubert*, the Supreme Court interpreted Rule 702 to require "the district court to act as an evidentiary gatekeeper, ensuring that an expert's testimony rests on a reliable foundation and is relevant to the task at hand." *S.V. Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 778 (7th Cir. 2017) (citing *Krik v. Exxon Mobil Corp.*, 870 F.3d 669, 674 (7th Cir. 2017) (in turn citing *Daubert*, 509 U.S. at 589).

When an expert's opinion is simply not grounded in the facts of the case, the opinion will be excluded as unreliable and irrelevant. *Owens v. Auxilium Pharms., Inc.*, 895 F.3d 971, 973 (7th Cir. 2018); *Hartman v. EBSCO Indus., Inc.*, 758 F.3d 810, 819 (7th Cir. 2014) (stating that expert testimony must "fit the issue to which the expert is testifying and be tied to the facts of the case").

Federal Rule of Evidence 702 sets forth three requirements for reliability: the expert testimony (1) must be "based on sufficient facts or data" and (2) must be "the product of reliable

principles and methods," and (3) the expert must have "applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702(b)-(d); *Smith v. Ill. Dep't of Transp.*, 2018 WL 3753439, at *31 (N.D. Ill. Aug. 8, 2018), *aff'd*, 936 F.3d 554 (7th Cir. 2019).

Most pointedly, Rule 702's reliability element requires the Court to determine that the expert considered sufficient data to employ the methodology. *Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 766 (7th Cir. 2013); *Lees v. Carthage Coll.*, 714 F.3d 516, 521 (7th Cir. 2013) ("[T]he expert's testimony must be based on sufficient facts or data….").

"[A]n essential precondition" to the work of expert witnesses is that they are "considering and dealing with all of the evidence, not just the portions that fit the expressed opinion." *Martinez v. Garcia*, No. 08 C 2601, CASETEXT at *5, p. 3 (N.D. Ill. Nov. 5, 2012) (Judge Shadur) (copy attached).

An expert's opinion is properly excluded if there is "simply too great an analytical gap between the data and the opinion proffered" *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, (1997) ("Trained experts commonly extrapolate from existing data. But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Fuesting v. Zimmer, Inc.*, 421 F.3d 528, 536 (7th Cir. 2005)J. *See also Jones v. Union Pac. R.R.*, No. 12 C 771, CASETEXT at *21, p. 11 (N.D. Ill. Sep. 8, 2015) (copy attached) (Judge Lefkow).

Mr. Vuckovich's Reports did not consider and deal with all of the evidence, but the mere portions that fit with his expressed opinion, making his Reports unreliable and irrelevant.

### b. Mr. Vuckovich's admissions of incompleteness.

First, the unreliability of Mr. Vuckovich's conclusions is demonstrated by his failure to adequately describe the underlying facts and data he reviewed and relied upon, that is, the failure

to comply with the specificity requirement of Rule 26(a)(2)(B)(ii) discussed above. Given his general statement about the vast material he says he reviewed and the 16,000+ tardy document production, his citation of only a few pages *ipso facto* demonstrates this unreliability.

Second, Mr. Vuckovich admits that he did not interview or even attempt to interview the SFGH Defendants or Defendant Jafri:

Q.· ·Did you ever interview any of the individual, Sugar Felsenthal defendants?

A.· ·I did not interview any of them, nor do I know any of them.· I've never communicated with any of them in any way. (Ex. 9: Vuckovich Dep., p. 69.)

****

Q.· ·Did you make any -- did you make any effort to interview Farva Jafri?

A.· ·No, I did not…. (*Id.*, pp. 70-71.)

Third, he admitted that his opinions were based on an incomplete set of facts because he did not know and did not inquire into the redacted portions of the SFGH Defendants' billing statements to the Jafri Defendants: He did not ask Defendant Jafri to give him access to those bills, nor did he ask the SFGH Counsel who retained him. (*Id.*, pp. 69-75). This is of obvious significance because Defendants could have given him permission to review the redacted versions, something Plaintiffs could not do.

  **c. Mr. Vuckovich's Opinion that the attorney-client relationship between Signal Funding and the SFGH Defendants ended on October 27, 2017 fails to consider all of the facts, is wrong and is merely his attempt to tell the jury how to decide the case.**

Mr. Vuckovich states that the Signal-SFGH attorney-client relationship ended on October 27, 2017, when Defendant Friedland terminated it with his "I choose Farva" email to Signal's General Counsel. (Ex. 1: 1st Vuckovich Rpt., pp. 2, 4, 6, 9; Ex. 2: 2d Vuckovich Rpt., pp. 3, 4, 7,

9).[13] Mr. Vuckovich's blanket opinions about the absence of conflict under Illinois Rule of Professional Conduct 1.7 stop on that date.

That conclusion is not based on the 8,246 pages of documents or the 8,705 pages of depositions and exhibits that he purportedly reviewed and is wrong. Defendant Friedland's October 27, 2017 email to Ed Gehres, Signal's General Counsel only stated "We will therefore no longer be rendering legal services to Signal and will have no further attorney-client relationship with [Signal]." (Ex. 7: SFGH Dep. Ex. 24: 10/27/17 Friedland Email to E. Gehres; Bates No. 008401.) On its face, this did not terminate the attorney-client relationship that day.

Mr. Vuckovich claimed to have reviewed Mr. Gehres' deposition transcript and even cites to some of Mr. Gehres' deposition statements, yet he conveniently left the following out of the facts he considered for his report:

> Q.· · And then did you understand that to  mean that Mr. Friedland was informing you that the attorney/client relationship with Signal had come to an end?
>
> A.· · Not as of that day, but that he wished ·to bring it to a conclusion. (Ex. 19: E. Gehres Dep. Excerpts.)

Mr. Vuckovich cannot be permitted to testify to this incorrect factual conclusion that the relationship ended on October 27, 2017. Such testimony is nothing more than his attempt to tell the jury how to decide when the relationship ended.

This is improper. An expert is not permitted to "merely tell the jury what result to reach. *U.S. v. Brown*, 871 F.3d 532, 539 (7th Cir. 2017) ("…Rules 403, 702, and 704(b) operate (if in different ways) to prohibit expert opinions that would "merely tell the jury what result to reach."

---

[13] Mr. Vuckovich's Reports: "SFGH stopped representing Signal on October 27, 2017 per the email of Friedland to Gehres." (Ex. 1: 1ˢᵗ Vuckovich Rpt., p. 4; Ex. 2: 2d Vuckovich Rpt., p. 4.) "SFGH appropriately withdrew from representation of Signal on October 27, 2017." (Ex. 1: 1ˢᵗ Vuckovich Rpt., p. 9.) "The SFGH (*sic*) appropriately withdrew from representation of Signal on October 27, 2017." (Ex. 2: 2d Vuckovich Rpt., p. 9.)

(citing *U.S. v. Noel* , 581 F.3d 490, 497 (7th Cir. 2009) (in turn quoting Fed. R. Evid. 704 advisory committee's note to 1972 proposed rules).").

      This opinion should be excluded.

      **d.    Mr. Vuckovich's waiver opinion is materially incomplete.**

      Similarly, Mr. Vuckovich's opinion that Signal waived the conflict is materially incomplete and contrary to the uncontested facts and materials he claimed to review.

      He simply fails to discuss, or even mention, the fact that on the day Friedland abruptly terminated Signal as a client, Mr. Gehres, Signal's General Counsel, emailed this objection to him:

> I also think it would be prudent at that time for us to be absolutely clear about what each party perceives as the boundaries of potential conflicts (current or future) from any work you may undertake with former employees. (Ex. 11: Documents Cited in Vuckovich Rpt: 10/27/21 Gehres to Friedland Email: Bates No. 2nd Supp SFGH 008420.)

Moreover, Mr. Vuckovich fails to discuss the letter sent by Signal's counsel on December 8, 2017 to the SFGH Defendants the day after this lawsuit was filed:

> Second, as I explained, we were greatly perplexed by the discovery that your firm assisted in the organization of Looking Glass, at least in Delaware while Mr. Friedland and other lawyers at your firm were rendering legal services to Signal, as reaffirmed by Mr. Friedland's October 13, 2017 email to Ed Gehres, two ·weeks before Mr. Friedland's October 27, 2017 email to Mr. Gehres terminating that representation with the explanation that Ms. Jafri's "future endeavors may not be completely unrelated to the space in which Signal operates." You should refer this matter to your ethics counsel and notify your malpractice carrier that Signal reserves all rights and remedies it may have arising from what appears to be a stark and impermissible conflict of interest. (Ex. 20: Pls' Dep. Ex. PX 7 – 12/8/17 Demand Letter.)

Mr. Vuckovich's failure to deal with these undisputed facts renders his opinion unreliable.

      **e.    Mr. Vuckovich's opinions about the poaching of employees and investors are also materially incomplete and unreliable.**

      Mr. Vuckovich also baldly ignores the substantial evidence that the SFGH Defendants assisted and advised Defendant Jafri about poaching Signal employees and usurping investors.

(Ex. 1: 1st Vuckovich Rpt, p. 8; Ex. 2: 2d Vuckovich Rpt., p. 8).

The Court's Dismissal Ruling found the allegations of the Second Amended Complaint properly stated claims for conflicts on those bases. [Ex. 6: ECF 295, pp. 8-9]. As they were before the Second Amended Complaint was filed, those allegations are based on undisputed evidence.

The evidence establishes without contradiction that SFGH Defendant Schoenthaler prepared "universal term sheets" for prospective Looking Glass employees and Looking Glass investors. (Ex. 21.01 - Schoenthaler Dep. Excerpts, pp. 174-75.)

As to employees, Mr. Vuckovich simply discounts Defendant Jafri's emailing of Mr. Olsen's *Signal* employment agreement to SFGH Defendant Schoenthaler at a time when Defendant Jafri was actively telling potential investors in her stolen slide deck and emails that Olsen was actively involved in her venture as Chief Marketing Officer and was "tweaking" the financial models. (Ex. 22: Pls' Dep Ex. 21.2: Looking Glass Slide Deck Excerpts, p. 31; Ex. 23: Jafri Email to Pete Karnowski, p.8 of 8.)

As to investors, Defendant Schoenthaler admitted that she also prepared investment documents for Defendant Looking Glass investors. She prepared term sheets, for example, for one Brij Shah. (Ex. 21.01 - Schoenthaler Dep. Excerpts, pp. 174-75; Ex. 24: Pls' Dep. Ex. PX 68: Shah-SAR Term Sheets; Ex. 25.01: Shah Dep. Excerpts, pp. 77-78.) He had been solicited by Defendant Jafri in September 2017 while she was still Signal's Chief Operating Officer. (Ex. 26 - Pls' Dep. Ex. PX 72 - 2017 09 26 - FJ to BShah Email; Ex. 25.01: Shah Dep. Excerpts, pp. 52-54.) She never offered Shah the opportunity to invest in Signal. (Ex. 25.01: Shah Dep. Excerpts, p. 73.) He did invest in Defendant Looking Glass. (*Id.*, pp. 27-28.)

Defendant Schoenthaler also substantially revised the investment documents for OTRA (discussed in another context in this Court's Dismissal Opinion [Ex. 6: ECF 295, p. 5-6]). (Ex. 27:

Pls' Dep. Ex. PX 24 – Redlined OTRA Deal Documents; Ex. 21.01: Schoenthaler Dep. Excerpts, pp. 248-50.)

Finally, Mr. Vuckovich is flat wrong in his statement that "there is no evidence … that OTRA was ever an investor in Signal or had any relationship [in Signal]." (Ex. 1: 1st Vuckovich Rpt., p. 8; Ex. 2: 2d Vuckovich Rpt., p. 8.) The evidence is undisputed that Eager inquired about investing in Signal while Defendant Jafri was still Signal's COO. ." (Ex. 28: Pls' Dep. Ex. PX 85 – 7/31/17 Eager Inquiry Email.) While she was still Signal's COO, she responded by soliciting him to invest in Signal, but then a few days later, she told Eager "the strategy around th[e] deal h[ad] shifted" and that the "deal would not necessarily be with Signal, rather the deal would be with NewCo." (Ex. 29: Pls' Dep. Ex. PX 86: 9/16/17 1:59PM F. Jafri email, pp. 1-2.)

Thus, Mr. Vuckovich's opinions either omit any mention of SFGH conduct constituting malpractice or simply ignore evidence contrary to his otherwise unsupported opinions.

### f. The only remedy is to bar Mr. Vuckovich's testimony in its entirety.

Plaintiffs understand there is the rule, sourced in *Daubert*, that factual errors or omissions of an expert are best tested through vigorous cross-examination, if and only if the expert's testimony satisfies the threshold requirements of Federal Rule of Evidence 702. *Daubert*, 509 U.S. at 596.

But that principle cannot be fairly applied here because the failure of Mr. Vuckovich to consider all pertinent facts constitutes a failure to apply his analytical methodology to the issues. An expert's "testimony must 'fit' the issue to which the expert is testifying." *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002) (quoting *Porter v. Whitehall Labs. Inc.*, 9 F.3d 607, 614 (7th Cir. 1993)). Most fundamentally, the Court must conclude that the expert testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." *U.S. v. Gallardo*, 497 F.3d 727, 733 (7th Cir. 2007) The testimony must be relevant and factually linked to the case

in order to meet Rule 702's "helpfulness" requirement. *Daubert*, 509 U.S. at 591.

Given the stark omissions and errors of Mr. Vuckovich's opinions, his blanket testimony about the SFGH Defendants' supposed adherence to the standard of care would not help the jurors at all but would only mightily confuse them. "[A] trial judge has a responsibility to screen expert evidence for reliability and to determine the total effects of proposed evidence, weighing its probative value against its potential to (among other things) confuse the jury." *U.S. v. Schiro*, 679 F.3d 521, 529 (7th Cir. 2012).

The only remedy is to bar his testimony completely.

**5.      Mr. Vuckovich's opinions usurp the role of the Court in announcing the principles of law and instructing the jury on them.**

The Report cites only two Rules of Professional Responsibility as the source of the standard of care Mr. Vuckovich opines about: Rules 1.7 and 1.9. (Ex. 1: 1st Vuckovich Rpt.., citing Rule 1.7 - pp. 3-6; Rule 1.9 - pp. 3, 6. 7, 9). But his Report goes beyond establishing the basis for the standard of care and instead usurps the Court's role in stating the law, stating:

> "Rule 1.7 governs the time period prior to October 28, 2017." (*Id.*, p. 4.)

> "Under Rule 1.7 of the Illinois Rules of Professional Conduct, a concurrent conflict of interest exists if: a) the representation of one client will be directly adverse to another client, or b) the representation of one client poses a risk that the representation will be materially limited by the lawyer's responsibility to another client or third party or the lawyer's personal interest." (*Id.*)

> "Rule l.7(a) does not apply to the claims asserted against SFGH and its attorneys." (*Id.*)

> "Directly" adverse typically refers to being on opposite sides of a lawsuit. Rule 1.7 ( comment 6). (*Id.*)

> "Rule 1.7(b ), in the first instance, leaves it to the lawyer to determine whether there is a 'significant risk' that representation of the client will be materially limited. Rule 1.7 Comment 2." (*Id.*, p. 5)

> "Rule 1.9 of the Rules of Professional Conduct governs conflicts of interest which may exist as a result of prior representation of a client. The Rule states: …." (*Id.*, p. 6.)

"As used in the Rule, "matter" refers to a specific matter, not general recurrent services. Rule 1.9 Comment 2. As used in the Rule, "substantially related" means the same transaction or dispute or that confidential factual information "would materially advance the client's position in the subsequent matter." Rule 1.9 Comment 3." (*Id.*, p. 7.)

"General knowledge of a client practices and policies will not affect subsequent representation of another client. Rule 1.9 Comment 3. There must be specific matters to create a conflict of interest as referenced in Rule 1.9." (*Id.*)

Jury instructions are under the Court's purview. Mr. Vuckovich's instructions to the jury are impermissible and must be stricken.

### 6.   Mr. Vuckovich's proximate cause opinion is inadmissible.

Next, the original March 15 Report states that "the actions of SFGH did not proximately cause damage to the Plaintiffs." (Ex. 1: 1st Vuckovich Rpt., p. 3, 9.)

The Supplemental Report omits that opinion (Ex. 2: 2d Vuckovich Report, *passim*), but Mr. Vuckovich explains that omission as follows:

Well, the second Report is a supplemental.· So whatever is in the first Report still stands.· My opinions regarding the fact that there's no proximate cause with respect to the alleged misconduct of the lawyers still applies, it's still my opinion. (Ex. 9: Vuckovich Dep., p. 24.)

The SFGH Defendants therefore intend to offer this "proximate cause" opinion.

They cannot do so. Proximate causation in a legal malpractice setting is considered a factual issue to be decided by the trier of fact." *Governmental Interinsurance Exchange v. Judge* , 221 Ill.2d 195, 210, 850 N.E.2d 183 (2006) (quoting *Renshaw v. Black* , 299 Ill. App. 3d 412, 417–18, 701 N.E.2d 553 (5th Dist. 1998)).

The proximate cause opinion is inadmissible and must be stricken.

### 7.   Mr. Vuckovich's opinions about credibility, intent, and state of mind are inadmissible.

Next, the Supplemental Report impermissibly comments on the credibility of SFGH Defendant Friedland and his intent and state of mind on the key issue of his consideration of the

25

conflicting representation:

> Mr. Friedland testified he considered whether there was a 1.7 contract (*sic*). Mr. Friedland's analysis and conclusion was, in my opinion correct, and met the standard of care. (Ex. 2: 2d Vuckovich Rpt., p. 5.)

This testimony is inadmissible. *U.S. v. Vest*, 116 F.3d 1179, 1185 (7th Cir. 1997) (citations omitted). The same is true regarding testimony about a person's intent or state of mind. *Mizrachi v. Ordower*, No. 17 C 8036, CASETEXT at *5-6, p. 4 (N.D. Ill. May 2, 2021) (copy attached). As such, this testimony must be stricken.

### 8. Mr. Vuckovich is a "hired gun" who bases his opinions on an incomplete analysis, incomplete and misstated facts and mere speculation.

"In all cases, however, the district court must ensure that it is dealing with an expert, not just a hired gun." *Tyus*, 102 F.3d at 263.

Besides being defended by Mr. Konicek and Mr. Tahmassebi in *Busbice*, he has served as an expert for them in four matters, two for Dan Konicek, one in litigation, the other an ARDC case,[14] and two for Mr. Tahmassebi, this case and one other.[15] He has shared the podium with Mr. Konicek in one or two Chicago Law Bulletin seminars on the professional liability of lawyers, the subject of this case.[16]

It is irrelevant that he may possess some expertise in the professional responsibility of lawyers. "[Q]ualifications alone do not suffice. A supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method and are reliable and relevant under the test set forth by the Supreme Court in *Daubert.*" *Clark*, 192 F.3d at 759 n. 5. *See also  Indianapolis Colts v. Metropolitan Baltimore Football Club*

---

[14] The litigation matter was *Popovich v. Zukowski Rogers et al.*, 15 LA 78 (McHenry County); Mr. Vuckovich did not recall the name of the ARDC matter. (Ex. 9: Vuckovich Dep. Excerpts, pp. 12-13.)

[15] *Bruzgul v. Anton*, 16 L 2181 (Cook County). (Ex. 9: Vuckovich Dep. Excerpts, pp. 12-13.)

[16] (Ex. 9: Vuckovich Dep. Excerpts, pp. 40-41.)

*Ltd. Partnership*, 34 F.3d 410, 414 (7th Cir. 1994) (Posner, J.) ("Many experts are willing for a generous (and sometimes for a modest) fee to bend their science in the direction from which their fee is coming."); *Olympia Equip. Leasing Co. v. W. Union Tel. Co.*, 797 F.2d 370, 382 (7th Cir. 1986) ("[E]xpert witnesses . . . are often the mere paid advocates or partisans of those who employ and pay them, as much so as the attorneys who conduct the suit. There is hardly anything, not palpably absurd on its face, that cannot now be proved by some so-called 'experts."); *Minasian v. Standard Chartered Bank, PLC*, 109 F.3d 1212, 1216 (7th Cir. 1997) ("[The expert witness in this case" exemplifies everything that is bad about expert witnesses in litigation. It is full of vigorous assertion . . ., carefully tailored to support plaintiffs' position but devoid of analysis.").

It is apparent, therefore, that given the close professional relationship between Mr. Vuckovich and the SFGH Defense Counsel, he is a "hired gun" who has impermissibly tailored his opinions to fit the defense theory of the case based on an incomplete analysis, incomplete and misstated facts, and mere speculation.

His flawed improperly disclosed expert opinions should be barred in their entirety.

## CONCLUSION

For the above reasons, Mr. Vuckovich's testimony must be barred or substantially limited.

\* \* \* \*

Respectfully submitted,

  /s/ Constantine John Gekas
Constantine John Gekas
  CJG@gekaslaw.com
GEKAS LAW LTD.
33 North LaSalle Street STE 2220
Chicago, Illinois 60602
Tel: (312) 726-4501
Fax: (312) 726-4505

*Attorney for Plaintiffs*