

Signal v. Looking Glass
PLS' VUCKOVICH MOTION EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SIGNAL FINANCIAL HOLDING LLC and SIGNAL FUNDING LLC, both Delaware limited liability companies,<br><br>Plaintiffs,<br><br>v.<br><br>LOOKING GLASS FINACIAL LLC, A Delaware limited liability company, et al.<br><br>Defendants | No. 17 C 8816<br><br>Hon. Joan Humphrey Lefkow |

## EXPERT REPORT OF ADRIAN VUCKOVICH

### I. Qualifications

My qualifications are set forth in my curriculum vitae attached hereto as Exhibit 1.

### II. Materials Reviewed and Relied Upon

In reaching my opinions in this case, I reviewed the majority of the pleadings in the matter, the depositions and exhibits to the same, the production of the parties, the Court Order on the motion to dismiss and Illinois Rules of Professional conduct. I also relied on my education and experience in reaching my opinions.

### III. Relevant Facts

Signal Funding Holding LLC and Signal Funding LLC (collectively "Signal") are legal funding businesses which make high interest loans to individuals with claims and potential claims. The Signal entities are owned by 777 Partners. Pasko dep. at 7-8. The funds used to fund litigation or loans on cases are provided by 777 Partners and debt or loss obtained by Signal. Dep. of Pasko

1

at 8. The funds which 777 Partners provides to Signal come from its earnings or major financial institutions. Dep. of Pasko at 20-21. There are no outside investors in 777 Partners.

In 2016, Sugar Felsenthal Grais and Helsinger, LLP ("SFGH") began providing certain legal services to Signal. These were coded by SFGH as three areas of law: General Corporate, Sales Force (a Signal Vendor) and Trademark matters. Second Amended Complaint para. 150.

In July 2016, Farva Jafri ("Jafri") was hired by Signal. Jafri's position at the time of being hired was Vice President of Operations. Later, she was named Chief Operating Officer. There is no indication that Jafri had a written employment agreement with Signal. There is no indication that any of the lawyers at SFGH were involved in her being employed by Signal or her resignation and separation from Signal.

Signal employs lawyers and other individuals. At all times, Signal had a general counsel, either Ed Gehres or Sheila Schuster.

Jafri resigned from Signal on September 28, 2017. At the time that Ms. she left Signal, Jafri contacted Matthew Schiff of SFGH seeking advice about her separation from Signal and asking him to review certain documents including a separation agreement. 2nd Supp SFGH 008291. However, no advice was provided to Ms. Jafri by any SFGH attorney concerning her employment with Signal and issues concerning her resignation from Signal. *Id.* No documents were reviewed concerning Jafri's resignation and separation from Signal. *Id.*

On October 27, 2017, SFGH, through attorney Friedland, contacted Mr. Gehres of Signal and informed him that SFGH had determined to not represent Signal any longer because SFGH had decided to provide representation to Favri and businesses (litigation funding) in which she had an interest. The email stated that there was no ethical conflict of interest. Mr. Friedland stated that the SFGH firm believed it was the correct decision because of future considerations. 2nd Supp

2

SFGH 008401. Mr. Gehres, General Counsel of Signal, did not object. He thanked Mr. Friedland and said, "I understand your decision." 2nd Supp SFGH 008420. Subsequently, SFGH transferred all records relating to its representation of Signal to Signal and directed appropriate third parties (for example U.S. Patent and Trademark Office) informing them that the firm did not represent Signal. 2nd Supp SFGH 011488-89, 2nd Supp SFGH 011514, 2nd Supp SFGH 012574-81. There was no objection to SFGH's representation of Favri by Mr. Gehres throughout the period of October 2017-January 2018. The representation was disclosed to Gehres. Dep. of Gehres at 68, 72-73, 82.

### IV. Subject Matter of Opinions

Mr. Vuckovich will testify regarding the standard of care in effect during the relevant time period (2016-2018), that each of the Defendant attorneys and the law firm, Sugar Felsenthal, Grais & Helsinger LLP and attorneys, Friedland, Schoentheler, Cohen, and Vandesteeg, complied with the applicable standard of care at all times. Mr. Vuckovich will testify regarding the applicable Rules of Professional Conduct and interpretations of those Rules and relevant case law which establish the standard of care. Mr. Vuckovich will also testify regarding his backround, experience and the materials he reviewed with respect to the opinions set forth below.

### V. Opinions

SFGH and its attorneys acted appropriately and within the standard of care. The law firm and its attorneys acted with loyalty and care while representing Signal. The law firm and its attorneys did not engage in a conflict of interest in violation of Rules 1.7 and 1.9 of the Rules of Professional Conduct. Further, it is my opinion that the alleged conduct of SFGH did not proximately cause damage to the Plaintiffs.

3

Rule 1.7 governs the time period prior to October 28, 2017. SFGH stopped representing Signal on October 27, 2017 per the email of Friedland to Gehres.

Under Rule 1.7 of the Illinois Rules of Professional Conduct, a concurrent conflict of interest exists if: a) the representation of one client will be directly adverse to another client, or b) the representation of one client poses a risk that the representation will be materially limited by the lawyer's responsibility to another client or third party or the lawyer's personal interest.

Rule 1.7(a) does not apply to the claims asserted against SFGH and its attorneys. SFGH was not directly adverse to Signal at any time. "Directly" adverse typically refers to being on opposite sides of a lawsuit. Rule 1.7 (comment 6). It can apply to a transactional matter but those circumstances limited and are not present here.

SFGH was not directly adverse to Signal. There was no conflict of interest. The law firm did not represent Ms. Jafri in claims or potential claims which Signal had against her or which she may have had against Signal. To the extent that Ms. Jafri's resignation and separation from Signal could be said to create a circumstance in which Signal and Jafri were adverse, SFGH did not represent Jafri in the matter of her separation from Signal. Specifically, Mr. Friedland advised Ms. Jafri that SFGH and its lawyers would not advise Ms. Jafri about those matters and would not review documents concerning that and declined representation. That was exactly the correct thing to do and clearly within the standard of care. Moreover, there is no indication that SFGH had any involvement in Ms. Jafri's employment with Signal. She had no written employment agreement which was prepared or reviewed by SFGH lawyers. Jafri was hired by Mr. Chodes of Signal. Dep. of Wander at 40.

SFGH complied with the standard of care concerning the second aspect of Rule 1.7(b), representation which is materially limited by a lawyer's responsibility to another client, third party or the lawyer's interests.

Rule 1.7 (b), in the first instance, leaves it to the lawyer to determine whether there is a "significant risk" that representation of the client will be materially limited. Rule 1.7 Comment 2. SFGH acted appropriately and carefully and determined that its representation of Signal was not affected by the limited services it provided to Ms. Jafri and certain entities or businesses which she owned and or controlled and therefore, did not engage in conduct which violated the standard of care as examined under the language of Rule 1.7(b).

SFGH provided limited representation to Ms. Jafri prior to Ms. Jafri's resignation from Signal on September 28, 2017.

In August 2017, SFGH provided 2.5 hours of work, consisting of preliminary business matters. This was unrelated to Signal in any respect. In September 2017, services provided were less than the previous month, 2.2 hours in total. The services in September consisted of reviewing a contract and other minor work also not adverse to Signal. In October 2017, some work was done to organize and register legal entities. However, these services are ordinary, basic "form filling" services which a non-lawyer can provide. In fact, a non-lawyer did perform much of the work, Mr. Rathje, a paralegal at the SFGH firm. Preparing forms to organize limited liability companies or corporations is not a conflict of interest because the mere formation of the entities posed no risk of limiting SFGH's representation of matters for Signal. It is also repetitive work not related to any specific representation provided to Signal. Lawyers are permitted to form and represent different corporate and business entities for clients without engaging in a conflict of interest.

5

The fact that the entities formed by Ms. Jafi were later used in a litigation funding business does not matter and does not render the law firm's conduct in forming the entities a violation of the standard of care. Comment 6 to Rule 1.7 allows simultaneous representation, in unrelated matters, of clients whose interests are only economically adverse such as representation of competing economic enterprises. Jafri's resigned from Signal in September 2017 and started a competing litigation funding company. The formation of the entities occurred after Jafri was no longer employed by Signal. SFGH's representation of Signal and Ms. Jafri (and her businesses) was within the standard of care.

There was one limited point in time when a conflict of interest could be said to exist. This was after Jafri resigned, she asked SFGH to review and advise her regarding a proposed termination agreement. SFGH correctly identified that this could be a conflict of interest and declined to provide the requested services to Ms. Jafri. Signal was informed of this non-representation.

The possibility that later, after Signal and Jafri became competitors, that there could be a conflict of interest in the future, did not require disclosure and consent by the SFGH and its lawyers. Rule 1.7 Comment 6.

SFGH stopped representing Signal on October 27, 2021. SFGH complied with the standard of care and did not engage in conflict of interest after its representation of Signal ended. Rule 1.9 of the Rules of Professional Conduct governs conflicts of interest which may exist as a result of prior representation of a client. The Rule states:

> "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or substantially related matter in which that person's interest are materially adverse to the interest of the former client unless the former client gives informed consent."

The representation provided to Jafri and her companies was not the same or substantially same as the representation provided to Signal.

As used in the Rule, "matter" refers to a specific matter, not general recurrent services. Rule 1.9 Comment 2. As used in the Rule, "substantially related" means the **same** transaction or dispute or that confidential factual information "would materially advance the client's position in the subsequent matter." Rule 1.9 Comment 3. At the time SFGH stopped representing Signal, it provided representation in three areas, according to the Second Amended Complaint, trademark matters, Sales Force related matters and corporate matters, without specificity. General knowledge of a client practices and policies will not affect subsequent representation of another client. Rule 1.9 Comment 3. There must be specific matters to create a conflict of interest as referenced in Rule 1.9.

There is no conflict of interest and therefore no violation of the standard of care because the representation provided to Jafri and her entities, after Jafri resigned from Signal, was limited to the formation of the three entities and advice about tax matters and contracts and business matters. The billing for the SFGH after October 27, 2017 demonstrates that the Firm's representation was limited in its nature and scope. It did not overlap with the prior representation which it provided to Signal, which was also limited in scope. There are no entries in the billing records which reflect that SFGH and its attorneys worked on the same or substantially same matters for Jafri as the firm did for Signal. Ms. Robinson's report does not refer to any actual specific matters.

For example, in her report, Ms. Robinson's says SFGH assisted Jafri in developing a competing business and making use of trade secrets, business leads and employees. Robinson Report at 10. Ms. Robinson acknowledges she is assuming the allegations of the Second Amended

7

Complaint are correct rather than relying on specific facts. No misuse of trade secrets by SFGH is identified. There is nothing in the record which supports the conclusion that trade secrets or business leads were provided to SFGH or disclosed by SFGH to Jafri. Dep. of Wander at 59-62, 94. SFGH's representation did not include solicitation of business or lending opportunities. Moreover, Signal had a general counsel and an assistant general counsel on staff.

Ms. Robinson opines that SFGH breached the standard of care based, in part, on an October 3, 2017 email from Jafri to Matt Eager of OTRA in which there is a reference to lawyers. The communication states that unspecified lawyers do not believe a former Signal investor could successfully sue OTRA or Jafri. Ms. Robinson "presumes" the reference to lawyers is SFGH and states that SFGH 's presumed advice violated the standard of care. Robinson report at 8, 10. However, the presumption is flawed. There is no evidence that the lawyers referenced are SFGH or that OTRA was ever an investor in Signal or had any relationship. Dep of Wander at 38, 39. Dep of Gehres at 23-24, 36-7, 39. Further, Robinson does not describe her basis for finding that the October 3, 2017 emails was referencing advice from SFGH. If the facts ultimately establish that the reference in the October 3, 2017 email is not to SFGH, then most if not all of Ms. Robinson's opinion has no basis. The same would be true as it relates to SFGH allegedly diverting investors.

Notably, there is no evidence that SFGH lawyers communicated with investors or potential investors of Signal who later became investors for Jafri's businesses while SFGH was representing Signal. Dep. of Wander at 23,38, Dep of Gehres at 23-4, 36-37, 39. Likewise, SFGH and its lawyers did not violate the standard of care by advising Jafri regarding a potential business relationship with Michael Olsen, a former Signal employee. There is no evidence that such advice was actually given by SFGH's lawyers.

8

SFGH withdrew from representation of Signal on October 27, 2017. At that time, Mr. Friedland informed Mr. Gehres that the firm would not provide representation to signal and informed Mr. Gehres that the firm would represent Jafri and her businesses. The communication was appropriate, in compliance with Rule 1.4. The firm could have continued to represent both funding businesses, although competitors, but determined to terminate representation and returned all documents within a reasonable period of time.

To the extent that a conflict of interest under Rule 1.9 could be said to have existed, Signal waived any such claim. This is because Signal was specifically informed that SFGH was representing Jafri on October 27, 2017. No objection was made. Rather, Mr. Gehres, Signal's General Counsel, said he understood the decision.

Finally, in my opinion, SFGH's actions did not proximately cause any damages. Jafri had no employment agreement and no non-complete. There was nothing stopping Jafri from leaving Signal and setting up a competing business. Similarly, there would be nothing to stop her from approaching any other of the thousands of transaction lawyers in Chicago to assist in the formation of the competing business or the preparation of documents for investors. Notably, there are no allegations that SFGH had any knowledge of Jafri's alleged misconduct in the manner is which she left Signal. Further, in 2017, Signal admittedly had no outside investors so nothing SFGH did or did not do could cause Signal to lose financing. Signal's financing was all from it parent company 777 Partners, Inc. For all these reasons, the actions of SFGH did not proximately cause damage to the Plaintiffs.

3/15/21
DATE

ADRIAN VUCKOVICH

Adrian Vuckovich
Collins Bargione and Vuckovich
One North Lasalle Street, Suite 300
Chicago, Illinois 60602

**Education:**

Law Degree-Loyola University of Chicago, 1991

B.A.- University of Wisconsin-Madison, 1987

**Academic Achievements:**

Loyola Law Journal-Member
Loyola Law Journal-Editor Judicial Symposium Issue
Loyola Law Journal-Author

Niagara Moot Court Team-Member
Niagara Moot Court Team-Member of First Place Team
and Best Brief Award

**Employment Experience:**

Collins and Bargione Associate 1991-1996
Collins Bargione and Vuckovich Partner 1996-present

**Authorized to Practice in the Following Courts:**

State of Illinois
U.S. District Court for the Northern District of Illinois (Trial Bar)
Seventh Circuit Court of Appeals
U.S. District Court Eastern District of Wisconsin
U.S. Supreme Court

**Bar Associations and Memberships:**

Chicago Bar Association

**EXHIBIT 1**

Illinois State Bar Association
Lake County Bar Association
American Bar Association
DuPage County Bar Association
Association of Professional Responsibility Lawyers

**Expert Witness Experience:**

221 Partners Fund v. Pederson and Houpt, 13 L 01444 (Cook County)

Hindman v. Hill, (Cook County)

Knox v. Berke, 13 CH 000914 (Cook County)

Cook County Forest Preserve v. Jack Rivo, (Cook County)

Sandler v. Kaveny, 2017 L 4610 (Cook County)

U.S. v. Vrdolyak, 15 CR 314 (U.S. Dist. Ct. N.D. Ill.)

Bruzgul v. Anton, 16 L 2181 (Cook County)

Popovich v. Zukowski Rogers et al., 15 LA 78 (McHenry County)

**Practice Areas:**

Attorney Disciplinary Matters, Judicial Disciplinary Matters, Professional Negligence (Plaintiff and Defendant), Commercial Litigation, Breach of Fiduciary Duty Claims, Real Estate Litigation, Partnership Disputes, Trials and Appeals

**Awards:**

2017 Vanguard Award Recipient

**Seminars:**

June 2018-Panel member Law Bulletin Seminar on Law and Technology

April-2019-Panel member Practising Law Institute Seminar, Updates on Ethic Issues

June 2020-Panel Member Law Bulletin Seminar concerning intermediary referring businesses and the practice of law