IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SIGNAL FINANCIAL HOLDINGS LLC ) <br> and SIGNAL FUNDING, LLC, both ) <br> Delaware limited liability companies, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> LOOKING GLASS FINANCIAL LLC, a ) <br> Delaware limited liability company, *et al.*, ) <br> ) <br> Defendants. ) | Case No. 17 C 8816 <br><br> Judge Joan H. Lefkow |

**OPINION AND ORDER**

Before the court are four motions concerning the admissibility of expert witnesses. Plaintiffs Signal Financial Holdings LLC and Signal Funding, LLC (collectively referred to in the singular as "Signal") move to exclude the expert testimony of Adrian Vuckovich, offered by defendants Sugar Felsenthal Grais & Helsinger LLP, Jonathan P. Friedland, Vanessa J. Schoenthaler, Ethan M. Cohen and Elizabeth B. Vandesteeg (collectively "SFGH" or "SFGH defendants") (dkt. 601), and the expert testimony of Gary Chodes, offered by defendants Looking Glass Legal LLC, Looking Glass Partners LLC, Looking Glass Financial LLC, Pinnacle Disability LLC, Pinnacle Structures LLC, and Farva Jafri (collectively "Jafri") (dkt. 603). Both SFGH and Jafri separately move to exclude testimony of Signal's expert witnesses David Hough and Juan Arciniegas (dkts. 605, 606). For the following reasons, Signal's motion to exclude Vuckovich is denied; Signal's motion to exclude Chodes is granted; and SFGH's and Jafri's motions to exclude Hough and Arciniegas are granted in part and denied in part.

## ANALYSIS

I.  **Signal's motion to bar or limit the testimony of the SFGH defendants' malpractice expert Adrian Vuckovich pursuant to Federal Rules of Civil Procedure 37(c)(1) and 37(d)(1(a)(ii), Federal Rule of Evidence 702 and *Daubert*, and for an award of attorney's fees (dkt. 601) is DENIED.**

Signal moves to exclude or limit Vuckovich's expert testimony on the relevant standard of care for a legal malpractice claim. To prevail on a legal malpractice claim, a plaintiff must show (1) the defendant attorney owed the plaintiff a duty of care arising from the attorney-client relationship; (2) the defendant attorney breached that duty; and (3) as a proximate result, the plaintiff suffered damages. *Tri-G, Inc.* v. *Burke, Bosselman & Weaver*, 856 N.E.2d 389, 394 (Ill. 2006). Generally, a plaintiff must establish the standard of care against which the defendant attorney's conduct must be measured through expert testimony, and the failure to present expert testimony is typically fatal to the plaintiff's case. *See Barth* v. *Reagan*, 564 N.E.2d 1196, 1199–1200 (Ill. 1990).

   A.  **The governing standards for the admissibility of expert testimony.**

Under *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and Rule of Evidence 702, district courts are gatekeepers to expert evidence, ensuring that it is not only relevant but also *reliable*. *See Kirk* v. *Clark Equip. Co.*, 991 F.3d 865, 871 (7th Cir. 2021) (district court did not err in excluding expert's testimony where methodology was unreliable). Under Federal Rule of Evidence 702, a proffered expert's testimony is admissible if "(a) the expert's …specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." In making Rule 702 determinations, district courts follow the standard articulated in *Daubert* by scrutinizing "(1) the proffered expert's

*qualifications*; (2) the *reliability* of the expert's methodology; and (3) the *relevance* of the expert's testimony." *Gopalratnam* v. *Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017) (emphasis original). The proponent of the expert bears the burden of establishing the requirements of Rule of Evidence 702 by the preponderance of the evidence. *See Lewis* v. *CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). "[T]he key to the gate is not the ultimate correctness of the expert's conclusions. Instead, it is the soundness and care with which the expert arrived at her opinion." *Schultz* v. *Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013). Whether to admit expert testimony rests within the discretion of the district court. *See Gen. Elec.* v. *Joiner*, 522 U.S. 136, 142 (1997).

"Doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility." *Richman* v. *Sheahan*, 415 F. Supp. 2d 929, 943–44 (N.D. Ill. 2006) (citations omitted). "[W]hether the expert's theory is correct given the circumstances of a particular case is a factual one left for the jury to determine." *Stuhlmacher* v. *Home Depot U.S.A., Inc.*, 774 F.3d 405, 409 (7th Cir. 2014). And the factual basis for an expert's opinion goes to the credibility of the testimony, not the admissibility. *See Smith* v. *Ford Motor Co.,* 215 F.3d 713, 718 (7th Cir. 2000) (soundness of factual underpinnings of expert's analysis and correctness of the "conclusions based on that analysis are factual matters to be determined by the trier of fact, or, where appropriate, on summary judgment"). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

**B.     Vuckovich's testimony on the standard of care is admissible.**

The standard of care in a legal malpractice action is measured through expert testimony, *see Barth*, 564 N.E.2d at 1199–1200, and the Illinois Rules of Professional Conduct "may be relevant to the standard of care . . . ," *Nagy* v. *Beckley*, 578 N.E.2d 1134, 1138 (Ill. App. Ct.

3

1991). Vuckovich offers opinion on the relevant standard of care, using his experience and Rules of Professional Conduct 1.7 (Conflict of Interest: Current Clients) and 1.9 (Duties to Former Clients) in analyzing facts that he deems relevant.

Signal does not challenge Vuckovich's qualifications. Instead, it challenges the reliability and relevance of Vuckovich's opinions. Those arguments include Signal's belief that Vuckovich did not consider SFGH defendants' conduct after October 27, 2017, which it considers critical to its "hot potato" theory of liability (dkt. 614 at 4, Argument 1) and its claim that Vuckovich dealt "only with facts helpful to SFGH [d]efendants' case, and ignore[d] all others" (*id.* at 17, Argument 4).[1] Within these arguments, Signal identifies multiple facts that it believes were ignored or are inaccurate.

Vuckovich's testimony is both reliable and relevant. His testimony is reliable because, using his experience and knowledge, he links the facts that he deems material to his conclusions about the standard of care for a reasonable attorney. *See Cox as Tr. for Est. of Cent. Ill. Energy Coop.* v. *Evans*, 457 F. Supp. 3d 634, 648 (C.D. Ill. 2020) (expert's testimony reliable where he used facts "deemed relevant to the transaction," placed those facts in context, and offered opinions on whether a conflict disclosure was adequate to meet standard of care). And there is a "rational connection" between the facts and opinion. *See Manpower, Inc.* v. *Ins. Co. of Pa.*, 732 F.3d 796, 809 (7th Cir. 2013). Specifically, Vuckovich opines that there was no conflict of interest as proscribed in Rules of Professional Conduct 1.7 or 1.9 based on the particular services that SFGH provided Jafri while she was still employed by Signal and after her termination while, at the same time, representing Signal in "three areas of law: General Corporate, Sales Force (a Signal Vendor) and Trademark matters." (*See* Dkts. 614-1 at 3–9, 614-2 at 2, 9.) He also opines

---

[1] Signal's "hired gun" argument (Argument 8) is redundant of its other Rule of Evidence 702/*Daubert* arguments.

4

on the appropriateness of how SFGH terminated its representation of Signal. (*See* dkts. 615-2 at 9, 625-2 at 76–79.) Vuckovich's testimony therefore meets the reliability requirement.

Vuckovich's proposed testimony also is relevant to the issue and helpful to the jury. "Standard of care" is an abstract concept to a non-attorney, especially in a legal malpractice claim where the particular type of services rendered to Signal and Jafri are material to the analysis, and attorneys are subject to unique duties and limitations for current and former clients, as explained in the Rules of Professional Conduct. Indeed, except for the most obvious cases of negligence, the standard of care is established through expert testimony. *See Barth*, 564 N.E.2d at 538; *see also* Ill. Pattern Jury Instructions, Civil, No. 105.00 (2020). And there are different duties owed to current and former clients that are at issue for this claim. Vuckovich's testimony in this regard is also relevant and necessary to determining the standard of care.

Thus, Vukovich's opinions are based on his experience and qualifications, which have not been contested, and his review of the facts in this case that he deemed pertinent to determining whether SFGH breached the applicable standard of care. Those opinions are admissible. At bottom, Signal's arguments about reliability and relevance go to weight and credibility, not admissibility. Both Signal and SFGH accuse the other of ignoring certain facts in the case. But a review of the purported factual errors reveals that they are actually quibbles as to the facts and the inferences to be drawn from certain evidence, which are within the province of the jury. (*See* dkt. 614 at 11–16, 24–31; dkt. 625 at 12–15, 19–21.)

### C. Vuckovich's report and testimony will not be excluded as a discovery sanction.

Signal argues that Vuckovich's expert testimony should be excluded as a discovery sanction under Rule of Civil Procedure 37. Signal claims that SFGH violated Rule 26 by not adequately describing the facts or data that Vuckovich considered in forming his opinions in his

5

written report, in violation of Rule 26(a)(2)(B)(ii), and the report did not contain a statement of Vuckovich's compensation for his work on the case, in violation of Rule 26(a)(2)(B)(vi). Signal also seeks to exclude Vuckovich's testimony under Rule 37(d)(1)(A)(ii) because SFGH did not include a written response with its document production related to Vuckovich's opinions.

According to the parties' description of events, discovery unfolded as follows: On March 1, 2021, Signal issued a Rule 34 document production request on SFGH for all materials that their anticipated expert relied on and of any documents relevant to his compensation. On March 15, 2021, SFGH disclosed Vuckovich as its expert and tendered his expert report. That report did not contain a statement of his compensation. As to materials relied on, it broadly referenced "the majority of the pleadings in the matter, the depositions and exhibits to the same, the production of the parties, the Court Order on the motion to dismiss and Illinois Rules of Professional conduct," along with his "education and experience." Also on March 15, Signal issued a subpoena for the documents that Vuckovich relied on and his appearance for a deposition. On May 12, 2021, SFGH issued a supplemental expert report from Vuckovich that contained a more detailed explanation of materials relied on, including billing records and depositions of specific individuals. On May 13, 2021, SFGH electronically produced the documents relevant to the Rule 34 production request via a Dropbox link that organized the files within subfolders. Vuckovich was deposed on May 17, 2021, during which four new pages of his billing records were produced.

Rule of Civil Procedure 37(c)(1) allows sanctions on a party who fails to comply with Rule 26(a) or (e) unless that failure was "substantially justified" or "harmless." Fed. R. Civ. P. 37(c); *Finley* v. *Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996). "'Harmless' means a lack of prejudice to the party entitled to the information." *DR Distributors, LLC* v. *21 Century*

*Smoking, Inc.*, 513 F. Supp. 3d 839, 959 (N.D. Ill. 2021). To determine whether a discovery failure is substantially justified or harmless, the court considers: (1) the prejudice to the party against whom the improperly undisclosed evidence is or would be offered; (2) the ability of the violating party to cure the prejudice; (3) the likelihood of disruption of the proceedings; (4) and the bad faith or willfulness involved in not disclosing the evidence earlier. *See Uncommon, LLC* v. *Spigen, Inc.*, 926 F.3d 409, 417 (7th Cir. 2019). Moreover, Rule 37(d)(3) permits sanctions based on a party's failure to respond to a document production request under Rule 34.

Here, there is no apparent harm from the late disclosures. Signal states that the harm from the tardy production is obvious, but it is not obvious to the court. The documents were eventually produced before close of discovery and Signal still does not specify how Vuckovich's deposition would have gone differently had it received the documents earlier or how the late disclosure might prejudice them at trial. *See U.S. Sec. & Exch. Comm'n* v. *Berrettini*, No. 10 C 1614, 2015 WL 5159746, at *2 (N.D. Ill. Sept. 1, 2015) (late disclosure harmless where opposing party identified no harm if documents were introduced at trial and failed to allege that late production of documents inhibited trial preparation). The request to bar Vuckovich's report and testimony as a Rule 37(c)(1) sanction is denied.

The request for sanctions for the failure to serve written responses accompanying the document production under Rule of Civil Procedure 37(d)(3) also is denied. Rule 37(d)(1)(A)(ii) contemplates a complete failure to respond to a document request. And before bringing such motion, Rule 37(d)(1)(B) requires a movant to certify that he "has in good faith conferred or attempted to confer with the party failing to act in an effort to obtain the answer or response without court action." Here, Signal conferred with opposing counsel on August 19, 2021, around three months after the documents had been belatedly produced, which were organized under file

7

folders with descriptions of the documents, and discovery had closed. Signal waived the ability to seek sanctions for the written response requirement by waiting so long to fulfill its meet-and-confer obligation and seek sanctions for discovery conduct that appears to have caused no issue at the time of the late production. Moreover, there is no indication that the lack of a written response accompanying the file repository for the documents caused any confusion or harm. There was and still is no objection to the electronic form of the document production.

        **D.**        **Vuckovich's opinions do not usurp the court's role in announcing the law.**

Next, Signal argues that Vuckovich's report improperly instructs the jury on the applicable law. It claims that Vuckovich's citation to or quotation of Rules of Professional Conduct 1.7 and 1.9 and applicable comments to those rules usurps the court's role in announcing the law.

"In an action for legal malpractice the plaintiff must prove that the defendant attorney owed plaintiff a duty of due care arising from the attorney-client relationship, that the defendant breached that duty, and that as a proximate result, the plaintiff suffered injury." *Barth*, 546 N.E.2d at 91. The duty of care is defined by what a reasonably careful lawyer would do under circumstances similar to those shown by the evidence. *E.g.*, *Brown* v. *Gitlin*, 313 N.E.2d 180, 182 (Ill. App. Ct. 1974). Although it is ultimately for the jury to decide the duty of care, Vuckovich may tell the jury his opinion, based on his knowledge and expertise, of what a reasonably careful lawyer would do in the circumstances presented. Use of the Rules of Professional Conduct and opining on the relevant conduct offer some "concrete information" to aid the jury in making its decision. *United States* v. *Neushwander*, No. 15 CR 542-1, 2017 WL 4572212, at *3 (N.D. Ill. Oct. 14, 2017).

In addition, the expert may state his opinion whether, based on his knowledge and experience, SFHG's conduct was consistent with the standard of care in representing Jafri and

8

Signal at the same time. *See* Fed. R. Evid. 704; *United States* v. *Brown*, 871 F.3d 532, 539 (7th Cir. 2017) (expert opinion on ultimate issues not categorically impermissible, so long as expert opinion does not merely tell jury the results to reach). The jury will be instructed, as is always the case, that it is not required to accept the expert's opinion, *see* 7th Cir. Pattern Jury Instruction 1.21 (2017 rev.), thus placing in the jury's hands both the nature of the duty and whether there was a breach.

      E.    **Vuckovich may opine on proximate cause.**

Signal argues that Vuckovich may not offer testimony on the issue of proximate cause because it is a fact question for the jury. As noted in this court's decision on the motion to dismiss, "'[t]he proximate cause element of this claim requires that the plaintiff must . . . show that, but for the attorney's malpractice, the client would have been successful in the undertaking the attorney was retained to perform.'" (Dkt. 295 at 9 (quoting *Owens* v. *McDermott, Will & Emery*, 736 N.E.2d 145, 155 (Ill. App. Ct. 2000))). Under Illinois law, whether proximate cause is a legal or fact question depends on the nature of the claim, *e.g.*, *First Nat'l Bank of LaGrange* v. *Lowrey*, 872 N.E.2d 447, 470 (Ill. App. Ct. 2007), although no party addressed this discrepancy. In any event, the experts can explain the facts that lead to their opinions that Signal was or was not damaged by SFGH's actions. *See Nelson* v. *Quarles & Brady, LLP*, 129 N.E.3d 70, 96 (Ill. App. Ct. 2018) (court considered expert testimony on whether defendant law firm's failure to raise particular argument established proximate cause).

      F.    **Vuckovich does not impermissibly opine on Friedland's credibility, intent, or state of mind.**

Last, Signal cursorily argues that Vuckovich impermissibly opines on Friedland's credibility, intent, or state of mind by stating that Friedland's conclusion that no conflict of interest existed was "correct." Underlying Vuckovich's expert opinion on the standard of care

are Friedland's actions and analysis with regard to two of his clients. But Vuckovich's opinions, although they align with Friedland's, do not encompass any assessments or conclusions about Friedland's credibility, intent, or state of mind.

II. **Signal's motion to bar or limit the testimony of the Jafri defendants' expert Gary Chodes (dkt. 603) is GRANTED.**

Jafri disclosed Gary Chodes as an expert witness to offer testimony on the legal funding industry and the slide deck that is at issue in the claim for misappropriation of trade secrets. Signal submits several bases to disqualify Chodes as an expert or bar his expert testimony. Only disqualification based on a conflict of interest needs to be addressed.

The consensus in the Northern District of Illinois, among many other district courts, is that disqualification of an expert based on a potential conflict of interest is warranted where both (1) a confidential relationship existed between the party seeking disqualification of an expert, and (2) confidential information relevant to the action was exchanged. *See Demouchette* v. *Dart*, No. 09 C 6016, 2012 WL 472917, at *3 (N.D. Ill. Feb. 10, 2012) (Keys, Mag. J.); *U.S. Commodity Futures Trading Comm'n* v. *Oystacher*, No. 15-CV-9196, 2015 WL 9259899, at *3 (N.D. Ill. Dec. 18, 2015) (St. Eve, J.). On top of that, courts also balance policy concerns over the integrity and fairness of the adversary process. *Id.* Disqualification is drastic, imposed in the rare case where absolutely necessary. *See Hemphill v. Obaisi*, No. 15 C 4968, 2019 WL 4345360, at *1 (N.D. Ill. Sept. 12, 2019). The party seeking disqualification bears the burden of showing a conflict. *Id.*

Although disqualification is a high bar, it is more readily granted when the targeted expert is a former employee of the party seeking disqualification. "[M]ost courts" disqualify experts who are former high-ranking employees who learned of technical information related to the action. *Brunstad* v. *Medtronic, Inc.*, No. 14 C 255, 2015 WL 1962104, at *3 (W.D. Wis.

Apr. 30, 2015) (disqualifying former vice president of research and development for a defendant company who had important role in design and quality control of medical device at issue in action) (citing *Thompson, I.G ., L.L.C.* v. *Edgetech I.G., Inc.*, No. 11 C 12839, 2012 WL 3870563, at *5–6 (E.D. Mich. Sept. 6, 2012); *Pellerin* v. *Honeywell Int'l Inc.*, No. 11 C 1278, 2012 WL 112539 (S.D. Cal. Jan. 12, 2012); *Lifewatch Serv. Inc.* v. *Braemer Inc.*, No. 09 C 6001, 2010 WL 3909483 (N.D. Ill. Sept. 28, 2010)).

Here, disqualifying Chodes as an expert is appropriate. Chodes was employed by plaintiff Signal Funding LLC as its chief executive officer, beginning July 16, 2016 (dkt. 615-4), until his termination in March 2017 (dkt. 622 at 8). (His resume curiously stops at 2015. Dkt. 615-2.) His employment with Signal was governed by an agreement that contained a confidentiality clause. (Dkt. 615-4 at 6); *see Brunstad*, No. 14 C 255, 2015 WL 1962104, at *2 ("Many courts have held that the existence of a confidentiality agreement substantiates a reasonable expectation of a confidential relationship."). While CEO, Chodes was involved in the creation of the slide deck that is alleged to contain misappropriated trade secrets. (Dkt. 615-5 at 7.) Thus, as a high-ranking employee of Signal who had access to confidential information, Chodes satisfies the two requirements for disqualification. Further, no policy concerns override that determination. Disqualification would preserve the integrity of the judicial process and, it seems, would not unduly prejudice Jafri because Chodes may still serve as a fact witness.

Jafri develops no meaningful response to disqualification. She points out that the Seventh Circuit has not had the occasion to endorse or reject the disqualification test, and she factually distinguishes one of the cases on which Signal relies, *Great Lakes Dredge & Dock Co.* v. *Harnischfeger Corp.*, 734 F. Supp. 334 (N.D. Ill. 1990). But Jafri has presented no case where a court rejected or questioned the test, so the court follows the "abundant persuasive authority" and

11

employs the test. *Brunstad*, No. 14 C 255, 2015 WL 1962104, at *2. Moreover, Jafri does not address the relevance of Chodes' confidential relationship with Signal and involvement in the creation of the slide deck. Nor does she address any policy considerations.

Therefore, Chodes is disqualified as an expert based on a conflict of interest. The other bases in Signal's motion need not be addressed.

**III.  SFGH's motion and Jafri's motion to exclude expert report and testimony of David Hough and Juan Arciniegas (dkt. 605, 606) are GRANTED IN PART AND DENIED IN PART.**

To support its claimed damages, Signal disclosed David Hough and Juan Arciniegas as expert witnesses on damages. (Dkt. 605-1.) Both men are partners at 777 Partners LLC (*id.* at 1), which is Signal's parent company and is a, if not the, primary source of investment and credit for Signal (*see* dkt. 605-2 at 3–4).

Hough and Arciniegas submitted a joint expert report. (Dkt. 605-1.) But Hough was the one who created the formulas used in the report and Arciniegas merely reviewed it. (Dkt. 605-2 at 29–30.) In Hough's methodology, he based Signal's lost revenue and profits calculation on two components. He first took "the total capital committed and invested in Looking Glass"[2] from three investors — Brijesh Shah, OTRA Capital Partners, LLC, and Bryan Belcher — and assumed that both the committed and invested funds, totaling $620,000, would have gone to Signal under similar terms as those between 777 Partners, LLC and Signal but for Jafri's wrongful conduct. (Dkt. 605-1 at 5.) Then he plugged $620,000 into "collection curves" based on Looking Glass's financial projections and Signal's historical performance, to project what Signal's gains with that capital would have been, which he believed would have been nearly $3,500,000, a roughly 40 percent return. (*Id.*)

---

[2] "Looking Glass" refers to all of Jafri's corporate entities.

SFGH and Jafri do not challenge either purported expert's qualifications, and a review of their resumes shows that they have experience in finance generally. Rather, SFGH and Jafri challenge the reliability of their expert testimony. In addition to the standards described above, *see infra* section I.A., when making a reliability determination, courts consider the following non-exhaustive list of factors: "(1) whether the particular scientific theory can be (and has been) tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique has achieved general acceptance in the relevant scientific or expert community." *Kirk*, 991 F.3d at 873 (cleaned up). No one factor is dispositive, and test is "flexible." *Id.* The "inquiry focuses not on the ultimate correctness of the expert's conclusions, but rather on the soundness and care with which the expert arrived at her opinion." *Id.* (cleaned up).

Here, the "collection curve" methodology component can be tested, but because it was created specifically for this litigation it has not been peer reviewed or published, and there are no governing standards or general acceptance as to the methodology. Nevertheless, the methodology at least has some factual grounding in Looking Glass's own financial projections and Signal's historical data, and its accuracy based on the assumptions can be readily ascertained. That is reliable enough for admissibility's sake.

The more difficult question is whether the $620,000 input for that methodology is reliable. The issue here "is whether this is a case where the expert's assumptions amount to rampant speculation and should be excluded, or whether his assumptions merely represent a weak factual basis for his testimony that is appropriately challenged on cross examination." *Heller* v. *Dist. of Columbia*, 952 F. Supp. 2d 133, 140 (D.D.C. 2013) (quotations marks omitted).

The fact supporting Hough and Arciniega's opinion about lost revenue and profit is that three investors "committed" or "invested" in Looking Glass. From that factual premise, Hough and Arciniegas assume a lot about the counterfactual. Indeed, there are assumptions embedded within that assumption: (1) that all three investors would have brought business to Signal but for Jafri's alleged wrongdoing, even though the three investors were in contact with Jafri at different times before and after her departure from Signal; (2) that the sum would have included both the committed and invested funds; and (3) on terms materially similar to terms used between Signal and 777 Partners, LLC.

Erring on the side of admissibility, the credibility of this speculation can be tested through rigorous cross-examination. If a jury believes that Jafri diverted one or more of these investors while at Signal, then it is not out of the realm of possibility that one or more of them would have invested with Signal if Jafri had not left. SFGH and Jafri point out several infirmities with these opinions and, if the case progresses to a jury, they will have plenty of fodder for cross-examination.

Finally, because Hough created the formulas, the court exercises its discretion to bar Arciniegas from offering expert testimony. Only Hough may give expert testimony on his damages calculation, even though it was presented as a joint report.

The other bases raised relating to the admissibility of the expert's testimony are denied without prejudice and may be addressed later in a pretrial motion *in limine*, if this case gets to that stage.

## CONCLUSION AND ORDER

For these reasons, the court rules as follows. Signal's motion to bar or limit the expert testimony of Adrian Vuckovich (dkt. 601) is denied; Signal's motion to bar the expert testimony

14

of Gary Chodes (dkt. 603) is granted; and SFGH's motion (dkt. 605) and Jafri's motion (dkt. 606) to bar expert testimony of David Hough and Juan Arciniegas are granted in part and denied in part.

In light of these rulings, Signal's motion for leave to file a motion for partial summary judgment (dkt. 641) is granted; the response is due 3/23/22 and reply due 4/6/22. Signal's motion to seal document (dkt. 639) is reserved and is taken with the motion for partial summary judgment.

The status hearing scheduled for 3/1/22 at 11:15 AM stands.

Date: February 23, 2022

_____
U.S. District Judge Joan H. Lefkow