IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
Eastern Division

| | |
|---|---|
| SIGNAL FINANCIAL HOLDINGS LLC, *et al.*, ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | Case No. 17-cv-8816 |
| ) | |
| LOOKING GLASS FINANCIAL LLC, *et al.*, ) | Hon. Joan Humphrey Lefkow |
| ) | |
| **Defendants.** ) | |

**PLAINTIFFS SIGNAL FINANCIAL HOLDINGS LLC AND SIGNAL FUNDING LLC'S MEMORANDUM IN OPPOSITION TO THE JAFRI DEFENDANTS' MOTION FOR SUMMARY JUDGMENT[1]**

The Jafri Defendants' Motion for Summary Judgment has no merit.

**FACTUAL AND PROCEDURAL BACKGROUND**

Signal incorporates its Response and Counterstatement of Material Facts [ECF 691] to the Jafri Defendants' Rule 56.1 Statement of Facts [ECF 685].[2]

**1.     Breach of Fiduciary Duty**

Based on Defendant Jafri's own words and actions, the uncontested facts show that while she was a senior officer of Plaintiffs, she solicited three investors for her competing businesses, successfully obtaining the investment of at least $470,000 from all three (Eager, Shah & Belcher, though the amount of the investment by Belcher is unknown), with the availability for an additional $150,000 (from Eager), thus usurping those investments from Plaintiffs.

All that is left is a disputed issue of damages that will require further proceedings.

---

[1] In accordance with the Attorney Guide to Hyperlinking in the Federal Courts (for Microsoft Word users), this Memorandum contains hyperlinks to the cited cases on the WESTLAW database, plus hyperlinks to cited exhibits and filings in this and other courts.

[2] Because the Court has excluded Mr. Chodes as an expert, Signal does not deal with his expert report and presumed expert testimony. [ECF 653: 2/23/2022 Opinion & Order on *Daubert* Motions, pp. 10-12].

In support of this Opposition, Signal incorporates by reference its Memorandum in Support of its Summary Judgment Motion on Count Four against Defendant Jafri for Breach of Fiduciary Duty [ECF 659] and the supporting Rule 56.1 Statement of Facts [ECF 642: Pls' Rule 56.1 Statement of Facts on Fiduciary Duty Summary Judgment Mot.].

Signal adds the following:

*Fiduciary Duty* – As a preliminary matter, Signal notes that Jafri's current version that she was not an officer of Signal but merely an assistant to her mentor/friend/client/expert/boss Chodes, and after his firing was not recognized or treated as an officer, is directly contrary to her testimony at the Preliminary Injunction Hearing and in other venues, cases, and settings. Compare [ECF 685-5: Jafri Mem., p. 3; ECF 691: Pl's R. 56.1 SOF Response & Counterstatement, ¶ 8]. As such, it falls within the "sham affidavit" rule that a party cannot create a factual issue by recanting or contradicting prior sworn testimony. *Essick v. Yellow Freight Sys., Inc.*, 965 F.2d 334, 335 (7th Cir. 1992) (and decisions cited therein)(party cannot create issues of credibility by contradicting his own earlier sworn testimony in state agency proceeding); *Diliberti v. U.S.*, 817 F.2d 1259, 1263 (7th Cir. 1987) ("It is well established that a party cannot create a genuine issue of fact by submitting an affidavit containing conclusory allegations which contradict plain admissions in prior deposition or otherwise sworn testimony."); *Bank of Illinois v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1172 (7th Cir. 1996) (cannot contradict prior testimony at child custody hearing).

Moreover, this newest concocted description of her responsibilities is directly contrary to her March 22, 2022 Declaration in her Equal Pay Act case against Signal Funding, in which she swears: "Josh [Wander] appointed me as Chief Operating Officer of Signal Financial Holdings LLC and Associate at 777 Partners." [*Jafri v. Signal Funding LLC,* Case No. 19-cv-645: ECF 80-1:

2

3/8/22 Jafri Decl. ¶ 13, p. 4].

The Court should ignore Jafri's cynical attempt to evade that prior testimony.

In any event, her arguments are meritless.

First, Jafri contends that she was not a high-ranking officer of Signal because she was only an assistant to her mentor/friend/client/expert/boss Chodes.[3] [ECF 685-5: Jafri Mem., p. 3]. That argument is frivolous in the extreme. She was hired as the VP of Operations, and she says that Chodes left the running of the company to her. [ECF 691: Pl's R. 56.1 SOF Response & Counterstatement, ¶ 8; *see also* J*afri v. Signal Funding LLC*, Case No. 19-cv-645: ECF 80-1: 3/8/22 Jafri Decl. ¶ 13, p. 4: "Josh [Wander] appointed me as Chief Operating Officer of Signal Financial Holdings LLC and Associate at 777 Partners."].

In any event, Chodes was fired in March 2017, so she could not have served as his "assistant" after that. The facts on which the fiduciary duty claim stands occurred during September 2017 and thereafter, long after Chode's firing, so this "merely an assistant" argument fails for that reason alone.

*Constructive Discharge* – Second, as to the period covered by this claim, long after Chodes departed, Jafri argues that she had no fiduciary duty because she was not treated as an executive and was "constructively discharged" because of certain alleged actions by one of the principals of 777 Partners LLC, Signal's parent.[4] [ECF 685-5: Jafri Mem., pp. 3-5].

---

[3] This contention is equivocal, however, because at another point, she states: "Though Jafri may have held an executive position when she worked for Chodes, which changed when Chodes was allegedly terminated." [ECF 685-5: Jafri Mem., pp. 3-4].

[4] She says: "No reasonable person would believe that an 'executive' who was treated and compensated so poorly had any fiduciary duty to Signal or any other company for that matter." [*Id.*: Jafri Mem., p. 4]. "She had no duty to Signal after they constructively discharged her." [*Id.*, p. 5].

3

Of course, Signal denies those scurrilous allegations.[5] [ECF 691: Signal SOF Response & Counterstatement, ¶¶ 16-17]. But they are irrelevant. Jafri owed a fiduciary duty to Signal while she remained at Signal, even after the alleged events on which those accusations are based. So Signal brushes them aside as it has done with other of Jafri's prior poisonous and irrelevant slurs. [*See* ECF 407: Pls' Opp. to Jafri Mot. to Vacate PI, pp. 2-3; ECF 412: 5/22/20 Order Denying Mot. to Vacate].[6]

A supposed constructive discharge does not negate an officer's fiduciary duty and permit them to pilfer money from the cash register, or as in this case, steal trade secrets and investment opportunities that belong to the employer. Jafri offers no authority in support of that extraordinary

---

[5] Jafri's memo, but not her Statement of Facts, complains that her deposition was taken on one of her religious holidays. [ECF 685-5: Jafri Mem., p. 5]. Her complaints are false and as unbalanced as some of her other contentions throughout this case. In fact, two weeks earlier, she agreed to that May 13, 2021 deposition date, and a notice was issued accordingly. A scheduling conflict arose, leading Signal to file a Motion to Compel, and two days before her deposition –May 11 – she refused to appear, raising for the first time this religious holiday objection. Signal's Supplement to its Motion to Compel [ECF 552] suggested the accommodation that the deposition be rescheduled after the discovery cutoff date to accommodate that concern, but nevertheless the Magistrate Judge emphatically ordered Jafri to appear as scheduled:

> Defendant Jafri has not sought or obtained from this Court a protective order or other deviation from the parties' deposition schedule, and the reason stated in the motion by Plaintiffs would not constitute good cause for such a motion. The parties are reminded that notices of deposition are akin to court orders, and failure to abide by the notice as agreed upon may result in sanctions. [ECF 553: Docket Entry].

Jafri's repeated irrelevant and pointlessly accusatory diversions from the merits like this one, which nevertheless require responses in some instances, are a major problem in this case, and are as frustrating to Signal as they must be to the Court. This particular poison cannot be left unaddressed.

[6] Jafri and her former counsel have already been admonished against raising irrelevant arguments based on personal attacks as not supportive of any unclean hands defense. Relentless as ever, Jafri ignores those admonitions. [ECF 60: 1/12/18 Order re Scheduled Hearing, p. 2; ECF 91: 2/8/2018 Order on Motion to Strike & Seal]. Signal is at a complete loss as to how to protect itself and its personnel against these public calumnies which Jafri has pointedly and repeatedly asserted in other litigation across the country. [*See Goney v. SuttonPark Capital LLC*, No. 20-cv-05387 (S.D.N.Y.) – ECF 1: Complaint, ¶¶ 12, 39, 40; ECF 62-2: Amd Complaint, ¶¶ 12-39, 40; ECF 73: SuttonPark Mem. in Support of Motion to Strike, pp. 5-7. *See also Farva Jafri v. New Hampshire Supreme Court Committee on Character and Fitness, et al.*, No. 22-cv-39-JL (D. Conn.) – ECF 1: Complaint, ¶¶. 39, 53]. This erratic behavior shows that Jafri is on a vendetta against Signal and its management, which Plaintiffs will argue, at the appropriate opportunity, degrades her credibility.

argument. Such a contention is necessarily contrary to the Illinois doctrine that an officer's fiduciary duty to the employer is breached even when the officer diverts "the deal to himself, **whether before or after his resignation**." *Indeck Energy Services, Inc. v. DePodesta*, 2021 IL 125733, ¶ 47 (July 29, 2021) (emphasis added); *Veco Corp. v. Babcock*, 243 Ill. App. 3d 153, 161, 611 N.E.2d 1054, 1059 (1st Dist. 1993) (The resignation of an officer, however, will not sever liability for transactions completed after the termination of the party's association with the corporation of transactions that began during the existence of the relationship or were founded on information acquired during the relationship.); *Comedy Cottage, Inc. v. Berk*, 145 Ill. App. 3d 355, 360, 495 N.E.2d 1006, 1011 (1st Dist.1986) citing *H. Vincent Allen & Associates, Inc. v. Weis*, 63 Ill.App.3d 285, 292, 379 N.E.2d 765, 770 (1st Dist. 1978).

*Estoppel* – Third, in any event, Jafri is estopped from arguing that the corporate opportunities of the OTRA/Eager and Shah investments did not belong to Signal. "When a corporation's fiduciary uses corporate assets to develop a business opportunity, the fiduciary is estopped from denying that the resulting opportunity belongs to the corporation whose assets were misappropriated, even if it was not feasible for the corporation to pursue the opportunity or it had no expectancy in the project." *Graham v. Mimms*, 111 Ill.App.3d 751, 763, 444 N.E.2d 549, 557 (1st Dist. 1982); *Levy v. Markal Sales Corp.*, 268 Ill. App. 3d 355, 370, 643 N.E.2d 1206, 1217 (1st Dist. 1994); *Dominion Nutrition, Inc. v. Cesca*, 467 F. Supp. 2d 870, 881 (N.D. Ill. 2006). There is no dispute that Jafri used Signal's slide deck and financial spreadsheet in usurping the OTRA/Eager and Shah investments, so she is estopped from denying that those investments did not belong to Signal. [ECF 642: Pls' Rule 56.1 Statement of Facts on Fiduciary Duty Summary Judgment Mot., ¶¶ 23-55 ].

*Damages* – Fourth, Jafri contends that Signal has no damages arising from her usurping of

5

the OTRA/Eager and Shah investments because: (1) damages are not alleged; (2) Signal had no outside investors; (3) neither of the two confirmed investors, Eager nor Shah (the latter who invested as a friend of Jafri's), "could say they would have invested in or lent money to Signal"; (4) Signal would not have accepted either of these investments because they were too small and at "high interest" terms; and (5) Signal cannot show the loss of any funding deals from the denial of these capital investments. [ECF 685-5: Jafri Mem., pp. 5-6].

Those arguments are meritless.

1. The Complaint does allege damages from the loss of investors and other misconduct by Jafri. [ECF 247: 2d Amd. Complaint, ¶ 212, p. 46] ("These breaches of fiduciary duty by Defendants Jafri and Olsen proximately caused substantial damage to Plaintiffs by the loss of potential investors, loss of pre-settlement funding clients and deals, loss of other business opportunities, loss of misused and misappropriated funds.")

2. Signal was a startup company, so the fact it had no investors other than its parent at the beginning of its existence is irrelevant. It was searching for investors, like OTRA/Eager and Shah, who fall precisely within the categories of investors that Signal was targeting and for which Signal developed the slide decks, financial projections, and other marketing and solicitation materials stolen by Jafri from which this case originated. [ECF 691: Signal SOF Response, ¶¶ 30-31, 47-48].

3. Moreover, as a startup, the evidence establishes that Signal would have favorably considered the OTRA/Eager and Shah investments. [ECF 691: Signal SOF Response, ¶¶ 18-55, esp. 28-31, 46-47].

6

4. Those investments, totaling $620,000, were hardly trivial or negligible. In fact, Mr. Hough had a personal acquaintance with one of OTRA's principals, enhancing the likelihood of obtaining it as an investor, and was attractive to Signal for a number of reasons. [*Id.*].

As for the loss of the OTRA/Eager and Shah investments, this is a case of lost opportunity: the loss of the opportunity to obtain the investments of OTRA/Eager and Shah. The undisputed evidence is that using clumsily doctored marketing and financial information that reflected Signal's business plans, organization, and projections, Jafri was able to persuade these investors to invest in her entities. Had she sought those investments for Signal, using the identical materials, and given that Shah invested in part because of his acquaintance with her, there is sufficient evidence that it is more than likely they would have invested in Signal, which was situated identically to Jafri's untried, untested business but had a substantial presence and backing. [ECF 691: Signal SOF Response, ¶¶ 18-55, esp. 28-31, 46-47].

5. The Expert Opinion by David Hough reflected in his thorough Expert Report provides ample admissible evidence establishing damages. [ECF 691: Signal SOF Counterstatement, ¶ A, p. 40]. That Report shows that the loss of those capital investments led to the loss of the pre-settlement funding transactions that Jafri herself obtained, amounting to $328,000+ of pre-settlement loan transactions that belonged to Signal and amount to a significant financial loss.

And there is substantial evidence that based on its and Jafri's own profit projections, Signal would have been able to harness these capital infusions to generate substantial profits from pre-settlement funding transactions over a reasonable period. Signal did not obtain those profits because Jafri diverted these opportunities to herself. [ECF 691: Signal SOF Counterstatement, ¶ A, p. 40: D. Hough Expert Report].

Finally, based on a Statement of Fact from SFGH, Jafri argues that 777 Partner LLC's principal, Joshua Wander, was given the opportunity by Jafri to connect with Eager, but he ignored Jafri's email. [ECF 685-5: Jafri Mem., p. 8]. That assertion of fact is not included in Jafri's Statement of Facts and is wrong. Jafri forwarded Mr. Eager's initial inquiry to Mr. Wander and asked: "Let me know if you want me to respond." [ECF 685-5: Jafri Mem., p. 6, citing ECF 680, [¶ 40] (¶ 43 incorrectly cited by Jafri) & ECF 680-14: SFGH SOF Ex. 13A (email)].

But both Jafri and SFGH omit Jafri's testimony that Mr. Wander responded to that email with an emoji that she took as an acknowledgment. Then, a few weeks later, she emailed and then spoke with Mr. Eager, first about investing in Signal, then a few days later, switching to a solicitation to invest in her "NewCo." [ECF 691: Signal SOF Counterstatement, ¶¶ B & C, p. 40].[7]

At best, Jafri demonstrates issues of fact about Signal's damages.

The substantive law of Illinois determines whether the evidence can support damages. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 438 (1996).

In Illinois, "the evidence need only to tend to show a basis for the computation of damages with a fair degree of probability." *Jabat, Inc. v. Smith*, 201 F.3d 852, 857 (7th Cir. 2000) citing *Medcom Holding Company v. Baxter Travenol Laboratories, Inc.*, 106 F.3d 1388, 1398 (7th Cir. 1997) (quoting *In re Busse*, 124 Ill.App.3d 433, 438-39, 464 N.E.2d 651, 655 (1st Dist.1984)). Moreover, lost profits need not be proven with absolute certainty. *Medcom*, 106 F.3d at 1399. Such damages are not capable of proof with absolute certainty, and thus the courts merely require the evidence to "tend to establish a basis for the assessment of damages." *H. Vincent Allen, 63*

---

[7] Jafri's September 16, 2017 email to Eager stated in part: "Since we last talked, the strategy around this deal has shifted…. This deal would not necessarily be with Signal, rather the deal would be with NewCo…." [ECF 642: Pls' SOF on Fiduciary Duty SJ Mot. ¶¶ 25 & 26 & ECF 642-11: Pls' Dep Ex. PX 86: Jafri-Eager Emails].

8

Ill.App.3d at 379 N.E.2d at 770.

Moreover, Signal is entitled to at least nominal damages for Jafri's breach. Liability for nominal damages is in and of itself sufficient to sustain a cause of action. *Giammanco v. Giammanco*, 253 Ill. App. 3d 750, 758, 625 N.E.2d 990, 997–98 (2d Dist. 1993) citing *Busse*, 124 Ill.App.3d at 439, 464 N.E.2d at 656.

Moreover, "in common-law cases, Illinois courts have allowed punitive damages supported only by nominal damages when the defendant's conduct is intentional." *Kirkpatrick v. Strosberg*, 385 Ill. App. 3d 119, 133, 894 N.E.2d 781, 795 (2d Dist. 2008) citing *In re Estate of Hoellen*, 367 Ill.App.3d 240, 252, 854 N.E.2d 774, 786 (1st Dist. 2006) (punitive damages can be awarded for intentional breach of fiduciary duty without an award of actual damages). Consequently, even if no actual damages will be awarded, Signal can and will pursue punitive damages given Jafri's intentional, outrageous, duplicitous wrongdoing.

In any event, the assessment of damages is a question of fact to be decided by the trier of fact. *Fieldcrest Builders, Inc. v. Antonucci*, 311 Ill. App. 3d 597, 607, 724 N.E.2d 49, 57 (1st Dist. 1999) citing *Meade v. Kubinski, 277 Ill.App.3d 1014, 1018, 661 N.E.2d 1178, 1182 (3rd Dist. 1996)*. *See also H. Vincent Allen*, 63 Ill. App. 3d at 292–93, 379 N.E.2d at 770.

Signal easily meets these tests. Jafri's attack on damages is meritless.

**2. Trade Secrets**

Jafri's argument about the trade secret claims of Counts One and Three is equally misplaced.

She argues that Signal does not own the trade secrets, which were instead stolen from Oasis. In support of that argument, she cites only five of her Statements of Fact, Nos. 71-75 [ECF 683: Jafri SOF, ¶¶ 71-75], none of which support her contention. Her point seems to be that because Signal was a startup business and had hired several Oasis employees, the trade secrets

9

belonged to Oasis, not Signal. [ECF 685-5: Jafri Mem., pp. 6-9].

First, that argument fails simply for lack of specificity. The trade secrets at issue are specific documents identified at the Preliminary Injunction Hearing and the Court's PI Opinion as the Slide Deck (PI Exhibit G), the financial spreadsheets (PI Exhibit H), and the Underwriting Guidelines (PI Exhibit J) [ECF 79: PI Opinion & Order, esp. p. 10]. Neither Jafri's Statements of Fact nor her brief identifies any information in those documents or sources for them from Oasis information. She makes a scattershot, generalized charge that Signal had Oasis information without tying any supporting evidence to the facts of this case. This lack of specificity dooms her argument on its face.

Second, she asserts that Signal was not the owner of the information and documents that are the subject of this litigation – that the Court's Preliminary Injunction ruling held were protectable trade secrets. PI Exhibits. [ECF 79: 1/31/2018 Mem. Opinion & Order on PI, *passim*]. Her first problem is that this argument is contrary to her testimony and that of Mr. Arciniegas at the PI Hearing, that together with Chodes, they drafted and revised those documents in multiple phases, and Mr. Arciniegas' testimony (and her admission) that she stole the secrets from Oasis. [*Id.*: ECF 74: 1/19/18 PI Hrg. Tr., Day 2, Testimony of F. Jafri, *passim*]. Her other problem is that none of her Rule 56 Statement of Facts supports this argument.

Jafri's resort to her emails with the prior Signal lawyers in the *Oasis* case is truly cynical. The first problem is that there is no mention of those emails in her Statements of Fact. The second problem is that she did not disclose these documents in discovery, as she was required to do.[8]

---

[8] She cannot reasonably argue now that Signal had these documents in its possession because early in the case she moved to disqualify Signal's counsel on the false grounds that he had had substantive communications with those prior counsel about those issues. In fact, there were no such communications, and, that dispute and the Rules of Professional Responsibility barred Signal's counsel from initiating such communications and obtaining those documents, and all other communications between those attorneys
(footnote continued on next page …)

But those emails suffer from the same fatal defect as her Statements of Fact; they are not specific to the trade secrets at issue – the Slide Deck (PI Exhibit G), the financial spreadsheets (PI Exhibit H), and the Underwriting Guidelines (PI Exhibit J). Nothing in those emails shows that the Oasis information was included in the three exhibits at issue.

Jafri's argument is most disingenuous because, under the direction of her mentor/friend/client/expert/boss Chodes, she was intimately involved in misappropriating the Oasis information that she now says negates Signal's trade secrets claim. (ECF 604-10: 12/1/2018 Jafri Affidavit in Oasis Cook County case, previously filed in this case as as an exhibit to Signal's Motion to Bar Chodes as Expert.) This is the basis of her current brazen defense that she did not steal the trade secrets from Signal; instead, she stole them from Oasis.[9]

Signal has adduced evidence, recounted in this Court's Preliminary Injunction Opinion [ECF 79, *passim*], about the source and preparation of the trade secrets at issue. It is gravely unfortunate that this newly concocted defense raises a factual dispute for trial, a regrettable development that caused Signal not to seek summary judgment on the trade secrets claim, one they still believe is open and shut. But that's all Jafri is entitled to – a trial at which she can explain, among other things, why she omitted this version of her trade secret defense from her preliminary

---

and Jafri. Now she produces those two emails by surprise and bases her argument on them. This is another example of her disregard of orderly procedure.

[9] On this basis, Jafri has raised an unclean hands defense, briefly touched on in the Magistrate Judge's Order quashing one of Jafri's third-party subpoenas. [ECF 590: 6/10/21 Order Quashing Subpoena]. But the doctrine applies to her with conclusive force due to her intimate involvement in the theft of Oasis materials. "The unclean hands doctrine precludes a party from taking advantage of her own wrong. Long v. Kemper Life Insurance Co., 196 Ill. App. 3d 216, 219, 553 N.E.2d 439, 441 (2d Dist. 1990). "The doctrine applies if the party seeking equitable relief is guilty of misconduct, fraud or bad faith toward the party against whom relief is sought if that misconduct is connected with the transaction at issue." *Tufo v. Tufo*, 2021 IL App (1st) 192521, ¶ 70, 2021 WL 1117917, at *12 (1st Dist. 2021). Jafri and Chodes victimized Signal by their misappropriation of Oasis materials, exposing Signal to a substantial lawsuit, damages, and equitable relief, and now with no proof, Jafri argues that her own misconduct bars Signal from seeking redress for her theft of its trade secrets that she cannot show, and which were not, based on any of the stolen Oasis materials. It is Signal that is the victim of Jafri's unclean hands.

injunction testimony.

There is no reason to regurgitate the rules of summary judgment. Two competing versions of the trade secret dispute require a trial. Let Jafri have the opportunity of proving her version. *Von Holdt v. A-1 Tool Corp.*, No. 04 C 04123, 2013 WL 53986, at *10 (N.D. Ill. Jan. 3, 2013) (conflict over the provenance of disputed trade secrets required a trial); *Del Monte Fresh Produce, N.A., Inc. v. Chiquita Brands Int'l Inc.*, 616 F. Supp. 2d 805, 832 (N.D. Ill. 2009) (same); *Next Payment Sols., Inc. v. CLEAResult Consulting, Inc.*, No. 17 C 8829, 2019 WL 955354 (N.D. Ill. Feb. 27, 2019) (same).

### 3. Computer Fraud and Abuse Act – Count Two

Given the Supreme Court's decision in *Van Buren v. U.S.*, 141 S. Ct. 1648 (June 3, 2021), Signal concedes that Count Two for violating the Computer Fraud and Abuse Act must be dismissed.

### 4. Aiding and Abetting Jafri by Jafri LLC Defendants – Count Five.[10]

Jafri's attack on Count Five for her LLC's aiding and abetting her own acts is based on the same arguments she advanced in her attack on the breach of fiduciary duty claim against her personally. Signal incorporates its arguments in opposition thereto, Section 2, pages on page 1–12 above.

To the extent that Jafri contends that those entities were not aiding her wrongdoing, Signal refers the Court to its Statement of Facts on its Breach of Fiduciary Duty claim in Count Four showing that Jafri's actions in soliciting the investors were undertaken by her on behalf of those entities as part of her structure of companies. [ECF 642: Pls' Rule 56.1 Statement of Facts on

---

[10] Given the settlement with Michael Olson [ECF 470: 10/27/2020 Olson Settlement Stip.; ECF 490: 12/28/2020 Judgment – M. Olson]; and the entry of a Permanent Injunction against him [ECF 471: 10/28/2020 Olson Injunction], Signal agrees that Count Six for aiding and abetting his wrongdoing should be dismissed.

12

Fiduciary Duty Summary Judgment Mot., ¶¶ 23-55].

## CONCLUSION

WHEREFORE, Plaintiffs ask that the Jafri Defendants' summary judgment motion be denied.[11]

\* \* \* \*

Respectfully submitted,

 /s/ Constantine John Gekas
 CJG@gekaslaw.com
GEKAS LAW LTD.
33 North LaSalle Street STE 2220
Chicago, Illinois 60602
Tel: (312) 726-4501;   Fax: (312) 726-4505

*Attorney for Plaintiffs*

---

[11] Jafri's Declaration [ECF 683-1, ¶ 14], but not her Statement of Facts asserts that January 31, 2018 "preliminary injunction … crippled the business before it could get off the ground." This is also untrue. She testified at the PI Hearing that she had prepared a slide deck of her own that did not include any Signal trade secrets and stopped using the Signal slide deck she had stolen. [ECF 74: 1/19/18 PI Hrg. Tr., Day 2, Testimony of F. Jafri, p. 134]. On January 8, 2018, she informed the investor Shah, who had just discovered this case online, that "[w]e anticipated the suit once we left since many people came over." [ECF 642-29: Ex. 29 to Pls' Fiduciary Duty SJ Mot.: 1/8/18 F. Jafri email to B. Shah.] ]. On January 14, 2018, after he learned of the lawsuit and she gave him that explanation, Shah invested an additional $50,000 bring his investment to $120,000. [ECF 642-20: Ex. 20 to Pls' Fiduciary Duty SJ Mot.: Shah Dep. Excerpts, pp. 27-28; ECF 642-24: Ex. 24 to Pls' Fiduciary Duty SJ Mot.: PX 68: SAR-Shah Term Sheets].

Finally, for the next six months until June 2018, she regularly provided Shah and others periodic performance reports showing a robust financial performance. The June 2018 Report is attached to Rule 56.1 SOF Response and Counterstatement. [ECF 691: Pl's R. 56.1 SOF Counterstatement D].