IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
Eastern Division

| | |
|---|---|
| SIGNAL FINANCIAL HOLDINGS LLC et al.,<br><br>Plaintiffs,<br><br>v.<br><br>LOOKING GLASS FINANCIAL LLC, et al.,<br><br>Defendants. | Case No. 17-cv-8816<br><br>Hon. Joan Humphrey Lefkow |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT**

Looking Glass Financial LLC, Looking Glass Partners LLC, Looking Glass Legal LLC, Pinnacle Structures LLC, Pinnacle Disability LLC, and Farva Jafri (collectively "Defendants"), pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, submit the following Memorandum of Law in Opposition to Signal Financial Holdings LLC and Signal Funding LLC's (1) Motion for Partial Summary Judgment on Count Four for Breach of Fiduciary Duty and (2) Motion for Summary Judgment on Defamation Counterclaim.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

In July 2016, Farva Jafri ("Jafri") was hired by Signal Funding LLC and Signal Financial Holdings LLC (collectively "Signal") and held various positions during her time there until she was later constructively discharged. SOF ¶¶ 6, 9. Throughout her employment at Signal, Jafri was under no employment agreement nor was she restricted by any covenants. *Id.* After Jafri's termination, Mark Weiner (Weiner), Signal Funding's Vice President of Operations, made defamatory accusations accusing Jafri of theft. SOF ¶¶ 37-38. Due to the slanderous remarks

made by Weiner irreversibly damaging Jafri's reputation, Jafri has sought to hold Signal responsible for their executive's defamation. SOF ¶ 2.

During her employment, with the approval of Signal's Founder and CEO, Gary Chodes, ("Chodes"), Jafri had been working on her own businesses during her time employed with Signal. SOF ¶ 9. Upon concluding her employment with Signal, Jafri formed the competing business Looking Glass Legal LLC. SOF ¶ 1. In August 2017, Jafri had been constructively discharged from Signal before she submitted a formal letter of resignation on September 28, 2017, to wholly sever her relationship with Signal. *Id.* Signal's breach of fiduciary duty claim is based upon Jafri's decision to leave Signal's employment and form a competing business. SOF ¶ 1.

Signal has moved for summary judgment on both their breach of fiduciary duty claim against Jafri and Jafri's defamation counterclaim against Signal themselves. However, due to the results provided by the vast evidentiary discovery, it has become evident that Signal has failed to substantiate its breach of fiduciary duty claim and has likewise fallen short in refuting Jafri's defamation claim against themselves.

## II.     ARGUMENT

### 1.     Signal Fails to Establish Breach of Fiduciary Duty Claim

The Seventh Circuit has determined that in breach of fiduciary duty claims under Illinois law, it is the plaintiff's burden to show (1) the existence of a fiduciary duty, (2) the fiduciary duty was breached, and (3) the damages were proximately caused by the breach. *Alonso v. Weiss*, 932 F.3d 995, 1001 (7th Cir. 2019) *Gross v. Town of Cicero,* Ill*.,* 619 F.3d 697, 709 (7th Cir. 2010).

### A. Jafri Owed No Fiduciary Duty to Signal

Illinois courts have plainly stated that "corporate officers and directors occupy a fiduciary relationship towards their corporation." *Brown v. Tenney*, 532 N.E.2d 230, 235 (1988). Such corporate officers' duties from their fiduciary relationship may prohibit them from taking advantage of business opportunities that "belong" to their corporation. *Lindenhurst Drugs, Inc. v. Becker*, 506 N.E.2d 645, 650 (1987). However, the duties owed by corporate officers or executives are held to a higher standard than the duties owed by simple employees. *See Bernstein & Grazian, P.C. v. Grazian & Volpe, P.C.*, 402 Ill. App. 3d 961, 931 N.E.2d 810, 825 n7 (2010) ("The law is clear that employees are held to different standards with respect to fiduciary duties than are corporate officers.").

While Jafri may have held the position of a corporate officer or some other executive position when working for Chodes, Jafri had no appointment creating a fiduciary duty after Chodes was replaced with Josh Wander, ("Wander") as Jafri's new boss. SOF ¶ 7. After Wander had taken control of Signal, Jafri's role did not resemble that of a corporate officer or any other executive position. *Id.* Jafri was neither treated with the respect such a position would require nor was she compensated in a manner that indicated the importance of her position. *Id.* For instance, in weekly meetings Wander repeatedly discriminated against Jafri and her Muslim faith by referring to all Muslims as "terrorists." SOF ¶ 8. Wander additionally used derogatory terms such as "towelhead," "Osama," and other vulgarities to refer to Jafri. *Id.* No individual holding the position of a corporate officer, executive, or any other role of import owing some form of fiduciary duty would be treated or compensated in such an abysmal manner by their employer.

To illustrate Wander's character after leaving aside the atmosphere of dread, intolerance, and bigotry Wander had thoroughly established at Signal, only a few years later Jafri would once

again be terrorized by circumstances involving a Federal RICO lawsuit against SuttonPark Capital LLC and SuttonPark Structured Settlements LLC, another of Wander's corporations that he owns. SOF ¶ 33-35. During the RICO lawsuit, Jafri's client, Lori Goney, received news regarding SuttonPark conspiring to solicit her and her husband's death while Jafri herself was subject to threats of retribution in the event further investigation was carried out into Wander's SuttonPark with the FBI. *Id.* Worse yet, Wander personally interfered with Jafri's future ventures after he directly called a potential investor interested in a project of Jafri's. SOF ¶ 37. In this call, Wander made remarks implying that the investor would get deposed in future litigation three or more times if they chose to do business with Jafri; this ultimately caused the investor to terminate his relations with Jafri due to fear of Wander's vendetta with Jafri. *Id.*

As Jafri could not rightly be considered an employee, Jafri had every right to compete with her former employer Signal and solicit any former customers that she wished. *Nw. Podiatry Ctr., Ltd. v. Ochwat*, 2013 IL App (1st) 120458, 990 N.E.2d 347, 361 ¶ 60 (absent a contractual restrictive covenant, an employee may compete with their former employers and even solicit their former customers if done after the termination of their employment); *see also Alpha Sch. Bus Co. v. Wagner*, 391 Ill. App. 3d 722, 910 N.E.2d 1134, 1149 (2009) (employees' duty of loyalty did not bar competing with their former employers and soliciting former customers; they "may plan, form, and outfit a competing corporation while still working for the employer"). Jafri was hired with no employment agreement and further was not bound by any kind of restrictive covenant by Signal. SOF ¶ 6. Jafri further did not compete with Signal until after she had been constructively discharged or even until after she had formally resigned. SOF ¶ 9-10. As such, Jafri's actions surrounding the formation of Looking Glass Legal LLC and her future

competition with Signal was done without the breach of any fabricated fiduciary duty that Signal claims was owed to them.

While Signal has attempted to force fiduciary duties upon Jafri by attaching titles to her position that were never formally observed in any employment agreement, mere titles themselves are insufficient to establish an employee as an officer owing a fiduciary duty to an employer. *See Instant Tech., LLC v. DeFazio,* 40 F. Supp. 3d 989, 1018 (N.D. Ill. 2014), aff'd, 793 F.3d 748 (7th Cir. 2015). Accordingly, there is no evidence to suggest that Jafri owed an executive's fiduciary duty to Signal in light of both Wander's religiously motivated prejudice against Jafri, and the level of Jafri's status, compensation, and her involvement at Signal.

### B. Jafri Breached No Fiduciary Duty to Signal

Signal alleges[1] that Jafri is liable for the theft of corporate opportunities due to her actions before her formal resignation on September 28, 2017. SOF ¶ 9. However, even if This Court determines that Jafri had some fiduciary duty to Signal, Jafri owed no duty after she had been constructively discharged from her employment in August 2017. SOF ¶ 9; *See also Root Consulting, Inc. v. Insull*, No. 14 C 4381, 2016 WL 806556, at *5 (N.D. Ill. Mar. 2, 2016) (held plaintiff was liable for breach of fiduciary duty after being unable to establish their constructive discharge). When establishing a constructive discharge, The Seventh Circuit has employed a two-part test in determining if an employee has been constructively discharged which requires the alleging party to show (1) "[the] working conditions had become intolerable" and that (2) "[the] employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated." *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010).

---

[1] Signal's argument was given inside their Memorandum in Support of their Motion for Partial Summary Judgment on Count Four Against Defendant Farva Jafri for Breach of Fiduciary Duty, p. 3, filed 02/28/22 (Dkt. #658).

5

In the instant case, Jafri experienced continual discrimination and harassment in her day-to-day activities that created intolerable working conditions. From her employer openly condemning her and every other member of her faith as "terrorists" to using racial slurs to refer to her in the presence of others, the conditions surrounding Jafri's employment were unacceptable; there is no reasonable person or jury that would view the environment Jafri faced and determine it was tolerable in the slightest. SOF ¶ 8. Signal further admitted that it was preparing to terminate Jafri before her resignation. SOF ¶ 9. Accordingly, Jafri only looked for investment capital for her own business after she had been constructively discharged. SOF ¶ 10. Jafri had no subsequent duty to Signal after they had constructively discharged her from her employment.

### C. Signal Fails to Show They Suffered Any Damages

Where the pleading party has failed to allege damages, summary judgment is proper. *See King v. Nat'l Human Res. Comm.*, 218 F.3d 719 (7th Cir. 2000) (affirming a motion for summary judgment granted for defendants finding that the plaintiffs suffered no damages); *Universal Mfg. Co. v. Gardner, Carton & Douglas*, 207 F. Supp. 2d 830, 834 (N.D. Ill. 2002) (finding it appropriate to grant the defendant's motion for summary judgment when the plaintiff could not demonstrate it had suffered damages that were caused by the defendant's alleged breach of fiduciary duty); *Disher v. Information Resources, Inc.*, 691 F. Supp. 75, 84 (N.D. Ill. 1988) (finding no damages arising out of breach of fiduciary duty claim and granting defendant's summary judgment).

Here, Signal has failed to allege damages that were proximately caused by the alleged breach of fiduciary duty. Signal does not state any damages caused by Jafri's alleged breach of fiduciary duties, but only cites costs that have been the result of this litigation – ultimately, costs

Signal has created for itself.[2] There is no factual basis for the claim that the creation of Defendants' business, which only originated fundings for a few months, resulted in any loss or damage to Signal. During 2017 and 2018, it is undisputed that Signal's only equity holder and lender to Plaintiffs was their parent company 777 Partners LLC ("777"). SOF ¶¶ 16, 20, 28. Additionally, Signal's CFO, Damien Alfalla (Alfalla), stated that Signal had no outside investors in 2017 and 2018. SOF ¶ 28. It is not reasonable to conclude that Signal would have taken a high-interest rate loan from OTRA Capital Partners LLC or somehow solicit Brij Shah and Bryan Belcher (Jafri's friends who have never invested in companies before investing with Jafri) to invest a few hundred thousand dollars.[3] SOF ¶¶ 11, 19-20, 23-24.

Further, neither of the two investors that Signal purportedly "lost" (OTRA and Brijesh Shah) could say they would have invested in or lent money to Signal. SOF ¶¶ 21, 25-26. Brijesh Shah was a friend of Jafri's who never had invested with a litigation funding company before (or any company at all before) and testified that he invested with Defendants because he admired Jafri's work ethic and professionalism. SOF ¶ 25. Moreover, Signal has failed to establish that it suffered any real loss as a result of having no funding because it never lacked funding. SOF ¶¶ 29-30. Signal cannot point to a single litigation funding that it could not make because of not having the capital to do so. SOF ¶ 30.

Thus, for the foregoing reasons, Signal's Motion for Partial Summary Judgment on Count Four Against Defendant Farva Jafri for Breach of Fiduciary Duty should be denied and Defendant's Motion for Summary Judgment seeking the dismissal of Signal's breach of fiduciary duty claim should be granted.

---

[2] In Signal's Second Amended Complaint, the only damages requested were those for the claims relating to Sugar Felsenthal, nominal damages, exemplary and punitive damages, and attorney fees. *See* Ex. 1, Second Amended Complaint, pp. 63-64.

[3] Brijesh Shah, OTRA, and Byran Belcher are the three investors that Signal identified as causing them damages. SOF ¶ 12.

## 2. Signal is Liable for Their Defamatory Accusations

Illinois courts and the Seventh Circuit have defined defamation as a "publication of any statement that 'tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with [him].'" *Madison v. Frazier*, 539 F.3d 646, 652-53 (7th Cir. 2008) (quoting *Seith v. Chicago Sun–Times, Inc.*, 861 N.E.2d 1117, 1126 (2007)). Further, to establish defamation, a plaintiff must provide evidence "that (1) a defendant made a false statement concerning the plaintiff, (2) there was an unprivileged publication of the defamatory statement to a third party, and (3) the plaintiff suffered damages as a result." *Seith*, 861 N.E.2d at 1126.

However, statements that are considered defamatory *per se* are "so obviously and materially harmful to a plaintiff that his injury may be presumed and he does not need to prove actual damages to recover." *Madison*, 539 F.3d 646, 653 (7th Cir. 2008). Weiner's statement was defamatory *per se* as a matter of law due to accusing Jafri of the commission of a criminal offense. *Tuite v. Corbitt*, 866 N.E.2d 114, 121 (2006). Accordingly, Jafri need only prove the first two elements as Weiner's statements were defamatory *per se*.

### A. Signal's Accusation of Theft Was a False Statement

When making out a defamation claim, a plaintiff must establish that the defamatory statement was false. *Voyles v. Sandia Mortg. Corp.*, 751 N.E.2d 1126, 1133 (2001); *Wynne v. Loyola Univ. of Chicago*, 741 N.E.2d 669, 675 (2000). Weiner's exact statement, made in the public meeting he had called, was that "Farva (Jafri) stole information from the company." SOF ¶ 37. Signal has contended that Jafri had illicitly taken their "trade secrets" which apparently

contained multiple "confidential" files including a marketing slide deck, financial spreadsheets, and finally marketing and financial documents.[4]

The information, documents, and files that Signal claims to be stolen do not belong to Signal and, in fact, belong to Oasis Legal Finance Group LLC and Oasis Legal Finance Operating Group LLC (collectively "Oasis"). In litigation between Oasis Legal Finance Company and Signal, the Circuit Court of Cook County determined that Signal had misappropriated Oasis' trade secrets, albeit after Signal settled the matter. SOF ¶ 39. The trade secrets Signal had stolen from Oasis included the very same marketing slide decks Signal has accused Jafri of taking, as well as Oasis' Confidential Information Memoranda (CIM) that contained financial and marketing information and documents. SOF ¶¶ 39-40. The additional financial and marketing documents that Signal has accused Jafri of taking were from the exact same Oasis CIM that they had stolen. SOF ¶ 40. Additionally, in Juan Arciniegas' deposition, he stated that he was the principal author of some of the documents that Jafri was accused of stealing. *Id.* He further detailed that due to his inexperience, he entirely relied on Chodes' knowledge which resulted in the Signal documents being near identical to those that Chodes had allegedly taken from Oasis. *Id.* It is nonsensical to believe that Signal would be able to steal Oasis' trade secrets yet immediately claim that the boon from their theft is now their intellectual property or their trade secrets.

Accordingly, Signal's defamatory statements were untrue due to the information neither being stolen from, misappropriated, nor even owned by Signal in the first place. Further, Signal's motion for summary judgment on this matter is improper as determining the truth of a statement is a jury question that should only be addressed by summary judgment if "no reasonable jury

---

[4] Signal listed the files and documents they believed were stolen in their Memorandum in Support of Their Rule 56 Motion for Summary Judgment on Defamation Counterclaim yet are unwilling to definitively describe such documents due to alleged confidentiality concerns. Dkt: 677, p. 2.

9

could find that substantial truth had not been established." *Tamburo v. Dworkin*, 974 F. Supp. 2d 1199, 1213 (N.D. Ill. 2013). At the very least, there are genuine issues of material fact regarding the truthfulness of Signal's unfounded criminal accusations. As such, Signal's motion for summary judgment regarding Jafri's defamation claim should be dismissed.

### B. Signal's Defamatory Statement is Not Protected by Privilege

Signal has contested that there are no grounds for defamation because their communications were privileged. Illinois courts have found that defamatory statements like those made by Signal *may* be protected by a qualified privilege when made within a legitimate business context. *Haywood v. Lucent Techs., Inc.*, 169 F. Supp. 2d 890, 916-17 (N.D. Ill. 2001), aff'd, 323 F.3d 524 (7th Cir. 2003). However, the statements must still be made in "(1) situations in which some interest of the person who publishes the defamatory matter is involved; (2) situations in which some interest of the person to whom the matter is published or of some other third person is involved; and (3) situations in which a recognized interest of the public is concerned." *Anderson v. Beach,* 386 Ill. App. 3d 246 (Ill. App. Ct. 2008) (quoting *Kuwik v. Starmark Star Mktg. & Admin., Inc.,* 156 Ill. 2d 16 (Ill. 1993)). In circumstances where a defamatory remark is given, even in a workplace, the person giving the statement, the persons to whom the matter is published, other third persons involved, or the public themselves must have an interest in the relevant statement. *See Haywood*, 169 F. Supp. 2d at 916-17 ("the communication that security staff [would] contact the police if [plaintiff] appeared on the premises is subject to a qualified or conditional privilege because [defendant], the security guards, and third-party employees have a compelling interest—even a duty—in knowing whether [plaintiff] was no longer employed by the company and no longer allowed on the premises."); *Kuwik,* 156 Ill. 2d at 25 (defendant insurance company and third party patients had a

compelling interest in knowing whether plaintiff chiropractor was acting within the scope of her license). The question of if a qualified privilege exists is a question of law for the court. *Kuwik,* 156 Ill. 2d at 25.

Weiner's statements were not covered by a qualified privilege. While Weiner may have had an interest in informing a few of the individuals in the meeting of the planned litigation, Weiner had no interest in bringing forward criminal accusations in a meeting filled with rank-and-file employees who themselves had no interest in receiving Weiner's slanderous statement. SOF ¶¶ 37-38. In *Haywood*, the defendant informed gate guards and other employees that they were to contact the police if the plaintiff were to seek entry onto the premises. *Haywood*, 169 F. Supp. 2d at 916-17. The defendant's statement had to be made to the recipients for the recipients to be able to perform their expected duties. *Id.* The circumstances of the instant case are markedly different from those of *Haywood* as Weiner's statements regarding the alleged theft were not necessary to meet his goal of informing the employees of the litigation. SOF ¶¶ 37-38. Further, the employees present included Sergio Estava (IT department), Ana Maria Galindo (finance department), Jennifer Barrera (sales department), Giovanna Ibarra (funding department), James Habel (sales department), Joseph Sarvadi (sales department), and others. SOF ¶ 37. The employees present did not need Weiner's defamatory statement to execute or even assist them in executing their respective IT, finance, sales, and funding duties required by their jobs. Accordingly, Signal's qualified privilege claim fails after neither Weiner nor the employees had an interest in the relevant statement.

However, even if This Court finds that Signal's statements were covered by a qualified privilege, that alone does not entitle Signal to summary judgment on the defamation claim. Even when defamatory statements are covered by a qualified privilege, a defamation plaintiff can still

recover on her claims by showing that the defendant abused this privilege. *Naleway v. Agnich,* 386 Ill. App. 3d 635 (Ill. App. Ct. 2008) (citing *Quinn v. Jewel Food Stores, Inc.,* 276 Ill. App. 3d 861 (Ill. App. Ct. 1995)). A plaintiff can show abuse of a qualified privilege by proving "any reckless act which shows a disregard for the defamed party's rights, including the failure to properly investigate the truth of the matter, limit the scope of the material, or send the material to only the proper parties." *Kuwik,* 619 N.E.2d at 136; *see also Anderson*, 897 N.E.2d at 367-68 ("A privileged communication loses protection if the publisher: (1) knew it was false or recklessly disregarded its falsity; (2) published it for an improper purpose; (3) published it to people not reasonably believed to be necessary recipients; or (4) did not reasonably believe that publication was necessary to accomplish its privileged purpose." (citing Restatement (Second) of Torts § 599, comment a, at 286)). The question of whether a qualified privilege has been abused is a question of fact for a jury. *Kuwik,* 156 Ill. 2d at 25.

Even if This Court determines that the defamatory statements made at Signal were protected by a qualified privilege, Weiner abused this privilege by neglecting to limit the scope of the disclosure in accomplishing its purpose and by making the statement in front of improper parties. Firstly, Weiner had called the meeting with the goal of announcing the lawsuit against Jafri. SOF ¶¶ 37-38. Instead of providing a statement that would accomplish his purpose of **notifying** his employees, Weiner chose to instead spew criminal allegations against Jafri in front of Jafri's previous peers and, in some cases, friends. *Id.* Weiner failed to limit the scope of his announcement to the Signal employees yet was more than willing to ignore his employees' subsequent questions or at all substantiate his allegations. SOF ¶ 38. Secondly, Weiner chose to make his defamatory statements in front of individuals that were not necessary recipients. SOF ¶ 37. The members present were members of the IT, sales, finance, and funding departments that

had no influence on the lawsuit and, as previously argued, had no interest in receiving the statement in order for them to fulfill the responsibilities of their positions. *Id.* While one could argue that James Habel and Joseph Sarvadi, who were the only individuals listed that served as executives or corporate officers, may have an interest, Ana Maria Galindo, Jennifer Barrera, Giovanna Ibarra, Sergio Estava, and the others present were normal employees with no outstanding interests in Weiner's defamatory accusations. *Id.*

Defendants have been unable to receive affidavits from either James Habel or Joseph Sarvadi due to individuals being afraid of retribution from Wander and his entities like SuttonPark and 777. Lori Goney herself stated that "SuttonPark and 777 are more than capable of harming me, my family, Farva (Jafri), or any third party." SOF ¶ 35. As such, Defendants believe it is necessary that the Defamation claims go to trial in accordance with Federal Rules of Civil Procedure Rule 56(d) in order for Defendants to be able to seek subpoenas for James Habel and Joseph Sarvadi's statements. Fed. R. Civ. P. 56(d)

Before fully initiating their lawsuit, Signal took it upon themselves to act as both a jury and a court of law to condemn Jafri as a criminal and slander her name through foundationless verdicts of theft. As such, Weiner's statement was an absolute abuse of the qualified privilege and, without such qualified privilege, Signal is liable for their defamatory accusations against Jafri.

### III. CONCLUSION

WHEREFORE, for the foregoing reasons, Defendants respectfully request that This Court reject both Signal's Motion for Partial Summary Judgment on Count Four for Breach of

13

Fiduciary Duty and Signal's Motion for Summary Judgment on Defamation Counterclaim. Additionally, Defendants respectfully request This Court award Defendants their costs in defending this action and grant such additional relief as This Court deems just and appropriate.

Dated: 06/20/2022	Respectfully submitted,

/s/ Farva Jafri_____

*Pro Se and Attorney for Defendants*
Farva Jafri, Esq. #5724166
JAFRI LAW FIRM
1731 W. Pierce Avenue, Suite 1
Chicago, IL 60622
(800)593-7491
farva@jafrilawfirm.com

CERTIFICATE OF SERVICE

I, Farva Jafri, an attorney admitted to practice in This Court, certify that I served all counsel of record via CM/ECF.

/s/    *Farva Jafri*