IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SIGNAL FINANCIAL HOLDINGS LLC and SIGNAL FUNDING, LLC, both Delaware limited liability companies, <br><br> Plaintiffs, <br><br> v. <br><br> LOOKING GLASS FINANCIAL LLC, a Delaware limited liability company, *et al.*, <br><br> Defendants. | Case No. 17 C 8816 <br><br> Judge Joan H. Lefkow |

**ORDER AND OPINION**

In count four of the second amended complaint, Signal Funding LLC alleges that Farva Jafri breached her fiduciary duty to the company by usurping its corporate opportunities. Both Signal Funding and Jafri move for summary judgment on this claim under Federal Rule of Civil Procedure 56. For the following reasons, Jafri is entitled to summary judgment on this claim.

**BACKGROUND**

On summary judgment, the court relies on the factual assertions and objections thereto contained in the parties' Local Rule 56.1 submissions. *See Curtis* v. *Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015) ("Compliance with … Rule 56.1 ensures the facts material to the issues in the case and the evidence supporting such facts are clearly organized and presented for the court's summary judgment determination."); *Stevo* v. *Frasor*, 662 F.3d 880, 886–87 (7th Cir. 2011) ("district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings"). What follows are many, but not all, *properly supported* factual assertions, based on the undisputed facts as admitted by the parties or, if an

objection was raised, based on the court's review of the underlying evidence. *See Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011).

Signal Funding[1] is a pre-settlement litigation funding business that was formed in 2016 by Gary Chodes and 777 Partners, LLC. (PSOF ¶6; DSOAF ¶3.)[2] 777 Partners was Signal Funding's sole investor during 2016–2018. (DSOAF ¶¶4, 16, 28.)

Jafri held several executive positions at Signal Funding from July 2016 through her September 28, 2017 resignation, including executive vice-president of operations, chief operating officer, chief financial officer, chief information security officer, and general counsel. (PSOF ¶11.) In those roles, she had access to business records, bookkeeping records, and bank accounts, and she signed documents on behalf of Signal Funding. (*Id.*) She was responsible for overseeing day-to-day operations, including funding, servicing, accounting, technology, and "basically everything that [the CEO] didn't do or [the] chief marketing officer didn't do or [the] VP of sales didn't do." (PSOF ¶12; *see* DSOAF ¶6.) She also developed business plans and supported Signal Funding's efforts to secure investors and capital. (PSOF ¶13.) Despite these duties, Jafri felt poorly compensated and that CEO Josh Wander, who became CEO in April 2017, did not treat her as an executive. (DSOAF ¶7.)

On July 31, 2017, Matthew Eager, who ran a small investment group called OTRA Capital Partners, sent an inquiry to Signal Funding's general email address:

> I run a small illiquid alternative investment fund that already has participation interests in several litigation portfolios. I am looking for some alternative sources

---

[1] This claim is brought only by Signal Funding, not Signal Financial Holdings LLC. The parties conflate them at times and do not offer separate analyses for both plaintiff corporations. But both the second amended complaint and factual support on summary judgment confirm that this claim involves Jafri's alleged breach of fiduciary duties to Signal Funding only.

[2] This decision cites Signal Funding's LR56.1(a)(2) statement as "PSOF ¶_" and Jafri's LR56.1(b)(3) statement as "DSOAF ¶_." Responses or objections to an asserted fact are indicated with an additional "R," as in "RDSOF" or "RPSOAF."

2

> to get access to this asset class for investing. Does your firm have a fund structure set up for ou[t]side investors to participate in financing the portfolio? If not, do you know of any competitors that may do so?

(PSOF ¶24.)

A few minutes later, Jafri forwarded the email to Wander, who responded with "some silly kind of response," "like an emoji," indicating that he was not interested. (Dkt. 684-6 at 109–11.) No response to Eager was sent. (*Id.*)

At some point in August 2017, Jafri considered herself to be constructively discharged from Signal Funding after being subjected to offensive and racist remarks from Wander at weekly meetings. (DSOAF ¶8.) But Signal Funding disputes that the remarks occurred. (RDSOAF ¶8.) In that same month, Jafri decided that she wanted to form her own pre-settlement funding business. (DSOAF ¶10.)

Beginning in early September 2017, Jafri solicited OTRA Capital Partners as an investor in her new business that she called, at the time, "NewCo." (PSOF ¶23.) On September 2, 2017, using her personal email account, Jafri responded to Eager's July 31, 2017 inquiry to Signal Funding, stating that she was aware that OTRA invests in pre-settlement funds and asking if he had time for a call that week. (PSOF ¶25.)

On September 16, 2017, Jafri emailed Eager again from her personal email, stating in part:

> Attached is a model for the pre-settlement funding business along with a presentation. The premise of this investment would be a legal/financial services strategy, beyond just pre-settlement funding.
>
> Since we last talked, the strategy around this deal has shifted. There are several partners that I have in the legal services space with businesses that are already operating, and who are interested in launching under a new brand, with a strategic investor. Disability services and structured settlements are two services that the small claims funding clients potentially need. This deal would not necessarily be

3

with Signal, rather the deal would be with NewCo. NewCo could launch with several product offerings to remain diversified….

(PSOF ¶26.) The email attached three files. One was the "NewCo Corporate Presentation," which was an altered version of a Signal Funding slide deck (PSOF ¶27), and the other two were files that were altered copies of financial spreadsheets that Signal Funding had used (PSOF ¶29).

On September 19, 2017, Jafri was introduced by a friend to Pete Karnowski, a managing member of Great Point Capital LLC. (PSOF ¶¶41, 42.) That day, Jafri emailed Karnowski about meeting. (PSOF ¶43.) The next day, September 20, Jafri emailed Karnowski "presentation/financials" documents for NewCo. (PSOF ¶44.) Jafri met with Karnowski and his team on September 25 and later emailed him more information. (PSOF ¶¶46, 47, 49.)

On September 26, 2017, Jafri emailed her friend Brij Shah from her personal email to solicit his investment in her new business: "We're working on revised financials for the two initial product lines and should have something revised to you in a week. Would love to consider an investment from you and also a board seat. Let me know what other information you may want to see and any questions you have." (PSOF ¶37.) Attached to the email were the same files that she had sent to Eager. (PSOF ¶38.)

On the evening of September 28, 2017, Jafri resigned from Signal Funding by emailing a resignation letter to a senior officer for 777 Partners. (PSOF ¶15.)

On October 3, 2017, a few days after her resignation, Jafri met with Eager and his business partner, Doug Rhoten. (PSOF ¶31.) In a follow-up email to Eager, she assured him that her solicitation of their investment and creation of a competing company was above board and that her actions were cleared by her attorneys. (PSOF ¶32.) OTRA committed to investing in Jafri's new venture, ultimately investing $350,000. (PSOF ¶34.) Shah also invested $120,000 in Jafri's new venture. (PSOF ¶39.) Great Point Capital did not invest. (PSOF ¶51.)

On October 7, 2017, Jafri used her Signal Funding email address to forward a slide deck, financial spreadsheet, and other Signal Funding files to her personal email account. (PSOF ¶20.)

In November 2017, Signal Funding learned that Jafri had used some of its marketing materials for her new venture and shortly thereafter filed this action. (PSOF ¶16.) Signal Funding alleges that Jafri breached her fiduciary duty to the company. She did so, Signal Funding alleges, because she held a position with the company that imposed a fiduciary duty on her; she breached her duty by forming a competing business and soliciting potential investors while still employed at the company and shortly thereafter; and her conduct caused injury based on the loss of the opportunities that she solicited for her competing company. (Dkt. 247 at 45–46.)

## **LEGAL STANDARD**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The existence of cross-motions for summary judgment, as is the case here, does not guarantee that there are no genuine issues of material fact. *See R.J. Corman Derailment Servs., LLC* v. *Int'l Union of Operating Eng'rs, Local Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003). When evaluating those motions, the court views the facts according to each motion's respective burden and draws reasonable inferences in the correct direction. *See Int'l Bhd. of Elec. Workers, Local 176* v. *Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002).

The court views all facts in the light most favorable to the nonmovant and draws all reasonable inferences in its favor. *See Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The movant bears the initial burden of showing that there is no genuine issue of material fact. *See Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986). To avoid summary judgment, the non-movant must do more than raise "some metaphysical doubt as to the material

facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. Rather, it "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). To create a genuine dispute of fact, the evidence must be "such that a reasonable jury could return a verdict for the [non-movant]." *Id.* at 248. If a claim is factually unsupported, it should be disposed of on summary judgment. *Celotex*, 477 U.S. at 323–24.

## ANALYSIS

To prevail on a breach of fiduciary duty claim based on the usurpation of a corporate opportunity, a plaintiff must show (1) that a fiduciary duty exists, (2) that the duty was breached, and (3) that the breach proximately caused the injury of which the plaintiff complains. *See Indeck Energy Servs., Inc.* v. *DePodesta*, 183 N.E.3d 746, 759 (Ill. 2021). Corporate officers owe a fiduciary duty to their employer and may not plan, form, or outfit a competing venture while working for the employer. *See Root Consulting, Inc.* v. *Insull*, No. 14 C 4381, 2016 WL 806556, at *4 (N.D. Ill. Mar. 2, 2016) (citing *Veco Corp.* v. *Babcock*, 611 N.E.2d 1054, 1059 (Ill. App. Ct. 1993)). Where, as here, the claim is based on the usurpation of corporate opportunities, the plaintiff must show that the defendant fiduciary took a proposed business activity that was reasonably incident to plaintiff's present or prospective business and is one which plaintiff could have taken on. *Id.* at 759–60. "The basic question in all corporate opportunity cases is whether the fiduciary has appropriated something for himself that, in all fairness, should belong to the corporation." *Id.* at 760 (cleaned up).

Signal Funding believes that it should prevail as a matter of law because it is undisputed that Jafri was a senior officer at Signal Funding who solicited investors and took their investments for her competing business, thus injuring Signal Funding. (*See* dkt. 659.)

This record strongly supports the conclusion that Jafri owed a fiduciary duty to Signal Funding and breached it, but Signal Funding has not shown that it was injured by the breach. On the fiduciary duty element of the breach claim, the undisputed evidence shows that Jafri's executive positions and high degree of responsibility and authority in company operations imposed a fiduciary duty on her. Jafri argues that she was not a fiduciary because she was not compensated as an executive and because Wander's treatment of her rendered her effectively demoted or constructively discharged as of August 2017. But there is no support in the law for either theory. Jafri's compensation, assuming it was low, and Wander's alleged offensive remarks are irrelevant to whether she was a corporate officer based on her title and substantive responsibilities at Signal Funding. Regarding her claim of constructive discharge, Jafri could not have been constructively discharged in August 2017 if she kept working for Signal Funding until her resignation on September 28, 2017, after she had already solicited investments from OTRA and Shah. In any event, resignation "does not sever liability for a breach of fiduciary duty based on transactions that began or were based upon information acquired while the officer was employed and completed after the officer resigned." *Root Consulting, Inc.*, 2016 WL 806556, at *5.

Jafri also breached her fiduciary duty by soliciting and successfully taking investments from OTRA and Shah for her new venture. It is undisputed that Jafri solicited these two opportunities while still working for Signal Funding, and she did not present them to Signal Funding or obtain its consent before taking those opportunities for herself. *See Advantage Mktg. Grp., Inc.* v. *Keane*, 143 N.E.3d 139, 152 (Ill. App. Ct. 2019).

As to those breaches, however, there is no evidence that they proximately caused the type of injury required for this claim. As recently stated in *Indeck Energy Services*, a misappropriation

of a corporate opportunity claim is not only about disloyal conduct, but also requires that the plaintiff corporation show that the usurped opportunity was exclusive or is no longer available — a zero-sum opportunity. 183 N.E.3d at 760–61. *Indeck Energy Services* affirmed the trial court's conclusion that the plaintiff corporation failed to show injury because there was "no evidence" that the usurped deal was "exclusive," and the plaintiff corporation merely "assumed that there was only one partnership opportunity with [the third party corporation]," but there was "no evidence of that fact[.]" *Id.* at 760 (internal quotations omitted); *see also Prodromos* v. *Everen Sec., Inc.*, 906 N.E.2d 599, 609 (Ill. App. Ct. 2009) (affirming directed finding for defendant fiduciary where proximate cause not shown, in part because "there was no evidence 'whatsoever' that [third party corporation] would have accepted plaintiff [corporation]'s offer").

Similarly, Signal Funding points to no evidence, nor has the court found any, showing that Jafri's taking of the OTRA and Shah investments foreclosed Signal Funding's ability to obtain similar investments from them. Rather, Signal Funding rests on the assumption that there was only one investment opportunity available from each investor and that injury necessarily flows from a breach. Summary judgment for Jafri is therefore appropriate.

## CONCLUSION

Signal Funding's motion to file documents under seal in support of its motion for partial summary judgment (dkt. 639) is granted. Signal Funding's motion for summary judgment on its breach of fiduciary duty claim (dkt. 657) is denied. Jafri's motion for summary judgment (dkt. 685) is granted in part as to the breach of fiduciary claim but reserved as to the other claims on which she moves for summary judgment.

Date: September 15, 2022

_____
U.S. District Judge Joan H. Lefkow